**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Defabian SHANNON, Defendant–
Appellant.**

No. 95–2367.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 3, 1996.

Decided Sept. 3, 1996.

Order Granting Rehearing En Banc and
Vacating Opinion Oct. 2, 1996.

Mel S. Johnson (argued), Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Mark S. Rosen, Michael Holzman (argued), Rosen & Holzman, Waukesha, WI, for Defendant–Appellant.

Before COFFEY, MANION, and KANNE, Circuit Judges.

MANION, Circuit Judge.

Defabian Shannon challenges the sentence he received after pleading guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). For the following reasons, we vacate the sentence and remand for resentencing.

### I.

On June 14, 1994, Shannon was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count I) and for intimidating a witness to the possession in violation of 18 U.S.C. § 1512(b)(1) (Count II). The court appointed Paul Barrett to represent Shannon. Mr. Barrett reached a deal with the government in which Shannon agreed to plead guilty to both counts. Thereafter a presentence report (PSR) was ordered and completed. On October 14, 1994, the government informed the district court that it intended to seek an increase in Shannon's sentence based on evidence that he had committed a homicide for which he was never charged. Soon after, Mr. Barrett withdrew as Shannon's attorney for health reasons and his colleague, Monika Neu, took on the case. Ms. Neu then filed a motion to withdraw the guilty plea, but a week later Shannon changed his mind and withdrew the motion, thus maintaining the original plea.

At a sentencing hearing held on December 15, 1994, the district judge found that Shannon's conviction for second degree sexual assault of a child (statutory rape) was a prior crime of violence which would affect his offense level under United States Sentencing Guideline (USSG) § 2K2.1(a)(4)(A). He further found that Shannon had threatened a witness, which would also impact his offense level under USSG §§ 2J1.2(b) and 3C1.1. Finally, the judge found that Shannon had participated in an uncharged homicide, which could justify an upward departure under USSG § 4A1.3, though no decision on whether to depart upward was made at that time. The case was then recessed with sentencing to continue a few days later. In the interim, fearing the magnitude of the potential sentence, Shannon's mother retained new counsel, Alan Eisenberg, who revived the motion to withdraw the guilty plea at the next hearing on December 19, 1994. The merits of the motion were debated in further proceedings on January 18 and February 15, 1995. Concerned that Shannon had not been properly informed of his potential sentence, the court granted the motion to withdraw and set the case for trial.

Mr. Eisenberg then withdrew and Michael Holzman, Shannon's current attorney, was appointed counsel in his stead. Mr. Holzman negotiated a new plea agreement in which Shannon pleaded guilty only to the firearm charge (Count I). Sentencing on the second plea was set for June 2, 1995 and a second PSR was ordered.

Before sentencing Shannon filed a motion to reopen the factual determinations made at the previous hearings regarding the sexual assault, intimidation of a witness (i.e., obstruction of justice), and homicide. The court denied this request, holding that its

prior findings were the law of the case, [R.71:p.5,7] though at the hearing the court did consider and address specific defense objections to the PSR. [Id. at 7]

The court computed Shannon's sentence as follows: The finding that Shannon had previously been convicted of a violent felony (second degree sexual assault) increased his initial base offense level from 14 to 20. USSG § 2k2.1(a)(4). The obstruction of justice finding further increased it by two, USSG § 3C1.1, but Shannon's willingness to accept responsibility and provide complete information to the government decreased it by three, USSG §§ 3E1.1(a) & 3E1.1(b), for a total offense level of 19. Depending on a defendant's criminal history, an offense level of 19 yields a sentence between 30 and 78 months. Though only 22 years old, Shannon had a lengthy criminal resume that included car theft, retail theft, battery, damaging property, obstructing an officer, and sexual assault. His criminal history category therefore was computed at V, which combined with an offense level of 19 established a sentencing range of 57 to 71 months. However, there was persuasive evidence that Shannon had committed an uncharged murder, and the court decided to depart upward and impose a sentence of 115 months, five months short of the statutory maximum. *See* USSG § 4A1.3 (authorizing upward departure where "criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that [he] will commit other crimes").

## II.

Shannon appeals his sentence on three grounds. First, he argues the district court erred in determining that his prior conviction for statutory rape was a violent crime under the Sentencing Guidelines. Next, Shannon challenges the court's willingness to consider and ultimately believe evidence that he participated in an uncharged homicide and its concomitant decision to depart upward from the recommended sentence. Finally, he disputes the court's use of the doctrine of law of the case to bar reconsideration of its factual determinations on the obstruction of justice

issue. We address each of these contentions in turn.

### A. Whether Statutory Rape Is a Crime of Violence

Under the Sentencing Guidelines, the base offense level for the crime of possession of a firearm by a felon is dictated in part by the defendant's criminal history. *United States v. Lee*, 22 F.3d 736, 737 (7th Cir.1994). If a defendant has a "prior felony conviction of . . . a crime of violence," his base offense level is 20. USSG § 2k2.1(a)(4)(A). The Sentencing Guidelines define a "crime of violence" as "any offense under federal or state law punishable by imprisonment" for more than a year that either:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (ii) is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

USSG § 4B1.2(1).

Shannon pleaded guilty to second degree sexual assault under Wisconsin law. Shannon denies this constitutes a conviction for a violent felony for purposes of the Sentencing Guidelines. Second degree sexual assault in Wisconsin is a statutory rape offense: "Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 16 years is guilty of a Class C felony." Wis. Stat. § 948.02(2). By the terms of the statute, no physical force, or even the slightest threat of physical force, is necessary for a conviction; there is no "element" of force, threatened or otherwise, in the crime. That excludes the possibility that it is a crime of violence under the definition in § 4B1.2(1)*(i)*.

Section 4B1.2(1)*(ii)* defines a crime of violence to include a conviction for conduct that "present[ed] a serious potential risk of physical injury to another." Here the criminal complaint alleged that Shannon forced his victim into a house, dragged her down the stairs into the basement, and then raped her. If we were permitted to credit such allegations, we would obviously conclude that

Shannon had committed a crime of violence. But we cannot. The Guidelines plainly limit our inquiry into whether the offense "presented a serious risk of physical injury" to "an examination of the facts charged in the relevant indictment or information." *Lee*, 22 F.3d at 740.[1]

■ The information in its entirety simply stated:

> [Defendant] [i]ntentionally and feloniously had sexual intercourse with a person who had not attained the age of Sixteen (16 years), to wit: Josanthia S. Lawrence, d/o/b: 04/27/77, contrary to the form of the statute § 948.01(2), in such case made and provided and against the peace and dignity of the State of Wisconsin.

These facts standing alone do not suggest violence. They merely indicate that Shannon, who at the time was 17, had sex with a girl under the age of 16. (Because the date of birth was included, we know she was 13 years, 10 months old.) Confined to these sparse details, we cannot say Shannon's conviction for second degree sexual assault was a conviction for a crime of violence under § 4B1.2(1)(ii).

■ Which leaves us with the possibility that in Wisconsin second degree sexual assault is by its nature—that is, always, without regard to circumstance—violent. Based upon his own "viewing of many sexual assault victims [and] studies done by sexual assault

units," the district judge adopted this position, concluding that second degree sexual assault poses an inherent risk of physical injury. We review this determination *de novo*. *United States v. Bauer*, 990 F.2d 373, 374 (8th Cir.1993) ("Whether statutory rape is a violent crime is a legal, rather than a factual, determination and therefore is reviewed *de novo*.").

We are unable to accept the district court's reasoning. In *United States v. Lee*, the underlying facts disclosed a victim who was forcibly seized and had her coat ripped as one of three robbers took her purse. But the actual charge of conviction recited only the terms of the statute. On appeal we declined to hold that the crime of "theft from the person of another"—a crime also without an explicit element of violence—was an inherently violent offense since some such thefts, pick-pocketings for instance, can be essentially nonviolent. 22 F.3d at 740–41; *cf. United States v. Smith*, 10 F.3d 724, 733–34 (10th Cir.1993) (second degree burglary conviction deemed not "crime of violence"). Admittedly, second degree sexual assault is a closer case, but the problem remains that although violence often accompanies the crime (as it likely did here), it is not essential to it. Under Wisconsin law, a boy one day over the age of 16 commits second degree sexual assault by having sex with his girlfriend the night before her 16th birthday.[2] Although certainly a crime in Wisconsin, like

---

**1.** *See also United States v. Talbott*, 78 F.3d 1183, 1190 (7th Cir.1996) ("Guidelines are a charge-offense rather than a real-offense sentencing system, a vital distinction that district judges must bear in mind."); *United States v. Joshua*, 976 F.2d 844, 856 (3d Cir.1992) ("[A] sentencing court should look solely to the conduct alleged in the count of the indictment charging the offense of conviction in order to determine whether that offense is a crime of violence under subsection (ii) of the guideline."); *United States v. Neal*, 27 F.3d 90, 93 (4th Cir.1994) (per curiam) ("If the statutory definition of the offense does not use [the enumerated] terms, then the trial court may look to the conduct described in the indictment against the defendant (but no further) in determining if the offense presented a serious potential risk of physical injury to another."); *United States v. Fitzhugh*, 954 F.2d 253, 255 (5th Cir. 1992) ("The sentencing court should consider conduct expressly charged in the count of which the defendant was convicted, but not other con-

duct that might be associated with the offense."); *United States v. Young*, 990 F.2d 469, 472 (9th Cir.), *cert. denied*, 510 U.S. 901, 114 S.Ct. 276, 126 L.Ed.2d 226 (1993), (The inquiry "must be limited to conduct charged in the indictment or information;" the sentencing court is not free to inquire into specific circumstances surrounding the conviction.); *United States v. Palmer*, 68 F.3d 52, 57–58 (2d Cir.1995) (reviewing recent cases).

**2.** Even more telling, it appears that under the strict terms of the Wisconsin statute, two 15 year olds commit second degree sexual assault against each other when they have sex. *See State v. Rushing*, 197 Wis.2d 631, 541 N.W.2d 155, 159 (App.1995) ("The essential elements of second-degree sexual assault of a child, § 948.02(2), STATS., where the charged crime is sexual intercourse are: (1) that the defendant had sexual intercourse with the child; and (2) that the child had not attained the age of sixteen years at the time of the sexual intercourse.").

pick-pocketing, such conduct is not necessarily violent. Here, Shannon was 17 and the girl 13 years, 10 months. Though both immoral and criminal, many teenagers have nonviolent, noncoercive sex with no hint of physical injury. Without something in the indictment or information suggesting otherwise, we cannot simply presume violence attends this crime.

We are aware that the Eighth Circuit in *United States v. Rodriguez*, 979 F.2d 138, 140–41 (8th Cir.1992), held that the defendant's "lascivious acts with children of the tender age of ten," one of them his own daughter, was "by its nature a crime of violence" even though no element of coercion or violence appeared in the statute. *Id.* at 141.[3] At least three other circuits have relied on *Rodriguez* to reach the same conclusion where significant age disparities existed between the child and the defendant. *United States v. Passi*, 62 F.3d 1278, 1279, 1281–82 (10th Cir.1995) (father pleads guilty to knowingly engaging in sexual acts with 13 year old daughter on federal property and stipulates to impregnating daughter); *Ramsey v. INS*, 55 F.3d 580, 581, 582–83 (11th Cir.1995) (lawful permanent resident since 1976 convicted of lewd assault and attempted lewd assault of a child under 16 years in 1990 and 1993, respectively); *United States v. Wood*, 52 F.3d 272, 273–75 (9th Cir.1995) (19 year old defendant convicted of taking indecent liberties with 4–5 year old victim); *United States v. Reyes–Castro*, 13 F.3d 377, 378–79 (10th Cir.1993) (father pleads guilty to attempted sexual abuse of a child after initially being charged with sexually abusing 12 year old daughter);[4] *see also United States v. Arnold*, 58 F.3d 1117, 1124 (6th Cir.1995) (facts of the indictment control "crime of violence" determination; case remanded to district

court to determine whether indictment (missing from record) for sexual battery suggested serious potential risk of violence).

Given how easily young bodies and minds can be damaged, and in light of the coercion naturally attending sexual acts with small children, we agree with cases like *Rodriguez* and *Wood* that such conduct involves a serious potential risk of physical injury and thus may be labeled a crime of violence under the Guidelines. Wisconsin recognizes the added graveness of sexual acts with young children. Had Shannon's victim been a 10 year old, as in *Rodriguez*, he could have been convicted of a much more serious offense: "(1) First degree sexual assault. Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 13 years is guilty of a Class B felony." Wis. Stat. § 948.02(1). Coercion, and thus a serious potential risk of physical injury, can also be presumed where the indictment or information indicates a significant age disparity between the defendant and his victim, and especially where incest is at issue. *See Passi*, 62 F.3d at 1279, 1281–82 (incest); *Ramsey*, 55 F.3d at 581, 582–83 (significant age disparity); *Reyes–Castro*, 13 F.3d at 378–79 (incest). But here we have neither significant age disparity nor incest; the facts specified in the indictment could have related to a violent encounter or to routine teenage sex. Again, the girl was almost 14 and Shannon 17—a situation that is not inherently violent, whatever its legality or morality. Therefore, the district court erred in its determination that regardless of the facts specified in a criminal indictment or information, second degree sexual assault in Wisconsin is a crime of violence.

Our dissenting colleague makes several arguments why federal courts should deem sec-

---

3. In *Bauer*, the Eighth Circuit reaffirmed its holding in *Rodriguez*. However, the exact ages of the defendant and the victim were unclear. The statute at issue defined rape to include sex with "any female child under the age of sixteen years" or if the defendant is "over the age of twenty-five years," sex with "any female under the age of seventeen years." *Id.* at 374; Iowa Code § 698.1 (repealed 1976).

4. USSG § 1B1.2(a) directs that when a plea agreement contains a stipulation that specifically establishes a more serious offense than the of-

fense of conviction, the sentencing judge is to determine the offense guideline most applicable to the *stipulated* offense. Thus, in addition to the criminal indictment or information of which the defendant was convicted, the sentencing judge may consult the stipulated facts of a plea agreement to determine whether a statutory rape offense presented a serious potential risk of violence to the victim. *Accord Palmer*, 68 F.3d 52 (sentencing judge can look to plea agreement to determine if crime of violence).

ond degree sexual assault in Wisconsin a violent felony for purposes of USSG §§ 2k2.1(a) and 4B1.2. The first argument is one of federal-state comity: because the Wisconsin legislature labeled second degree sexual assault an "assault"—as opposed to, say, "unlawful fornication"—and because it defines the crime as a "sexually violent offense" for purposes of its new civil commitment statute for sexually violent persons, see Wis. Stat. Ann. § 980.01 et seq. (West.Supp. 1995), federal courts applying the federal Sentencing Guidelines to federal convictions should consider it a crime of violence. [See Dissent at 1079.] Relying on labels like "assault" is problematic. The word "assault" in Wisconsin bears several legal meanings, not all of which entail violence. For instance, Wisconsin's definition of "fourth degree sexual assault" encompasses even the slightest intentional sexual touching. Wis. Stat. § 940.225. A tortious assault and battery likewise can be physically harmless. See Trogun v. Fruchtman, 58 Wis.2d 569, 207 N.W.2d 297, 310 (1973) ("A battery or assault and battery in this state has been defined as an intentional contact with another which is unpermitted.").

Wisconsin does label second degree sexual assault a "sexually violent offense" in at least one civil context. [See Dissent at 1080.] In 1993, after Shannon had pleaded guilty to second degree sexual assault, the State of Wisconsin enacted what it titled the "Sexually Violent Person Commitments" statute. Wis. Stat. Ann. § 980. (The statute was made effective June 2, 1994.) This statute created "a civil commitment procedure primarily intended to protect the public and to provide concentrated treatment to convicted sexually violent persons." State v. Carpenter, 197 Wis.2d 252, 541 N.W.2d 105, 107 (1995). In the definition section of the stat-

ute, second degree sexual assault is labeled a "sexually violent offense." This definition emerged out of an apparent legislative effort to identify all sex offenders who were being released from prison and who were considered "dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." Wis. Stat. Ann. § 980.01(7). (For a comprehensive analysis of the requirements and procedures of this statute see State v. Post, 197 Wis.2d 279, 541 N.W.2d 115 (1995).) Although this definition applies only to a statute governing civil commitments (a point the Wisconsin Supreme Court relied on in Carpenter to avoid ex post facto concerns), the dissent is highly critical because we do not unequivocally apply the "sexually violent offense" label to the federal Sentencing Guidelines. Although labels in criminal codes may be useful, at least when determining who is a career criminal, this court's determination under the Guidelines must, as a matter of federal law, be " 'independent of the labels employed by the various state's criminal codes.' " Smith, 10 F.3d at 733 (quoting Taylor v. United States, 495 U.S. 575, 592, 110 S.Ct. 2143, 2155, 109 L.Ed.2d 607 (1990)).[5]

In short, the Guidelines dictate that federal courts applying federal sentencing provisions to defendants convicted of federal crimes should employ federal standards when determining whether a prior conviction was for a violent felony. Section 4B1.2 of the Sentencing Guidelines rejects a "label-based" approach to defining the terms "crime of violence" and "prior felony conviction," both of which are at issue here. We have already laid out the objective federal criteria for establishing a "crime of violence." Those for identifying a "prior felony conviction" are likewise independent of state definitions and labels. Application Note 3 for § 4B1.2

---

5. It is worth noting that Wisconsin's civil law does not always treat sex with minors as a serious offense. For instance, J.J.G. v. L.H., 149 Wis.2d 349, 441 N.W.2d 273 (App.1989), held that an adult woman who seduced and became pregnant by a 15–year–old boy (thus committing second degree sexual assault of a child) was nevertheless entitled to child support from her victim. Cf. Loveridge v. Chartier, 161 Wis.2d 150, 468 N.W.2d 146 (1991) (intent to injure cannot be inferred from adult's "consensual" sexual encounter with 16– or 17–year–old since, although criminal, such conduct is not always harmful to child; insurance company therefore liable for claim against homeowner's policy for adult's transmission of herpes to child). In light of this, we are not as convinced as our colleague that Wisconsin always considers sex with minors, even those under 16, a crime of violence.

states: " 'Prior felony conviction' means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, *regardless of whether such offense is specifically designated as a felony* and regardless of the actual sentence imposed." [6] (Emphasis added.) Thus, the Guidelines have established a uniform federal approach for determining whether a prior state or federal conviction was for a violent felony. That approach is nevertheless respectful of the diverse criminal laws of the various states. The severity of the potential punishment, which will vary widely from state to state, is key to identifying a prior felony conviction; and the elements of a state-defined offense often dictate whether the crime will be considered violent. The Guidelines merely specify one set of state-created criteria (length of sentence, elements of the crime, *etc.*) over another (felony vs. misdemeanor label, violent vs. nonviolent label, *etc.*) for determining when federal courts must deem state convictions prior violent felonies. It strikes us that under the dissent's approach a state could designate as "nonviolent" a crime that objectively "presented a serious potential risk of physical injury to another." USSG § 4B1.2(1)(ii). Would federal courts be bound by that designation to impose a *lesser* sentence for a subsequent federal crime? We think not. Regardless of whether a state labels as "violent" a crime that the Guidelines' analysis would denominate "nonviolent," or vice versa, federal courts are only bound to consider those factors that the Guidelines specify.

One primary goal of the Guidelines is uniformity. As the Tenth Circuit noted in *United States v. Brunson*, 907 F.2d 117 (10th Cir.1990), were we to rely on state law to determine when a state felony conviction may be classified as a crime of violence under § 4B1.2, "the uniformity in sentencing the Guidelines [were] intended to ensure

would be jeopardized. Criminals with similar records might receive vastly different sentences [for a federal crime] simply because their past [state] crimes were defined differently by different states." *Id.* at 121. The court concluded that "uniformity in sentencing may best be achieved by applying the Guidelines without strict reference to state criminal law definitions," noting that "not even the question of whether a prior state conviction constitutes a felony under § 4B1.1 is to be determined by state law." *Id.* Surely Wisconsin's definition of second degree sexual assault under a civil statute should not be allowed to dictate this court's application of § 4B1.2. We are aware of no case authority suggesting otherwise.

The dissent also disagrees with our holding that second degree sexual assault is not inherently a crime of violence. [*See* Dissent at 1078.] We join our colleague's concern about the psychological, social, and moral damage caused by sex between teenagers. But the reality is that much teen sex (as opposed to sex between a full adult and a young child or teen) does not involve a serious risk of *physical* injury. Wisconsin makes a felon out of anyone, presumably even those under 16, who has sex with another under 16. A statute of such sweep inevitably criminalizes some nonviolent behavior, belying the possibility that the crime is inherently violent. Prosecutors may use their discretion and not bring criminal charges against two minors who engaged in "consensual" sex, but their conduct nevertheless violates state law. Conduct constituting second degree sexual assault cannot automatically be considered violent within the meaning of § 4B1.2.

Nor does the dissent's reliance on lack of legal consent save its inherently violent argument. [*See* Dissent at 1083–1084.] In Wisconsin, a minor's inability to consent to sex is a legal fiction, not a fact. The Wisconsin courts have made that abundantly clear.[7]

---

**6.** Neither party raised the possibility that Shannon's conviction (actually a guilty plea) for second degree sexual assault may not be a prior felony conviction at all due to his age at the time of the crime. *See* USSG § 4B1.2, Application Note 3.

**7.** *See J.J.G.,* 441 N.W.2d at 275 ("We reject appellant's assertion that because he was fifteen

years old when he had intercourse with L.H., he was incapable of consent.... The hugging, kissing, petting and other acts leading to intercourse detailed [in the record] can only be read as evidence of his willing and voluntary participation."); *id.* at 278 (contention that "because [15 year old] was the victim of a 'statutory rape,' the intercourse was nonconsensual" is "a conclu-

Federal courts are not bound by a legal fiction (one that Wisconsin's courts at times discard) to declare contrary to reality that all sex—regardless of age disparity—involving someone under the age of 16 entails a serious risk of physical injury. Moreover, the dissent's consent argument proves too much. A victim's lack of consent cannot alone define a crime of violence, otherwise virtually all crimes, from *Lee*'s purse snatching to embezzlement, would be crimes of violence.

Finally, the dissent advocates overruling *Lee* on the ground that it unnecessarily constrains the sentencing judge to the information or indictment, potentially permitting someone like Shannon to receive a lighter sentence than he deserves. [*See* Dissent at 1086 *et seq.*] The dissent believes the sentencing judge should be able to consider the allegations contained in the criminal complaint, whether or not they are proven. The crux of the controversy centers on the proper interpretation of USSG § 4B1.2(1), Application Note 2, which states, in part, that a sentencing court looks to "the conduct set forth (*i.e.,* expressly charged) in the count of which the defendant was convicted" in determining whether a prior crime was violent. We agree with *Lee* and many of the other circuits which have addressed the issue that in light of the concerns behind Note 2, this language is best read as constraining the sentencer to consideration of the conduct set forth in the indictment or information. *See supra,* note 1; *see also Fitzhugh,* 954 F.2d at 254 ("[T]he [Sentencing] Commission has repudiated [our cases] which held that a sentencing court can look beyond the face of the indictment in considering this issue.").

The wisdom of this constraint is manifest in the present case. Shannon pleaded guilty to an information accusing him of having sex with a girl under the age of 16 who, the record suggests, was a former girlfriend with whom he had once been sexually active. He did not plead guilty to the allegations of violence in the criminal complaint; he vigor-

ously denied that he forced the girl to have sex. But of course, there was no point in contesting the allegations because violence and lack of consent are irrelevant to a statutory rape conviction. The information that Shannon pleaded guilty to states only the facts necessary to satisfy the elements of the crime of second degree sexual assault, and nothing more. Under *Lee,* a federal court determining whether this constitutes a prior conviction for a crime of violence has only to look at the facts specified in the information and conduct the relatively straightforward analysis of § 4B1.2(1). But open the criminal complaint and consider its unproven allegations and, as the dissent indicates, defendants like Shannon will be entitled to call witnesses to rebut the accusations. Yet that is the very thing the most recent version of Application Note 2 was intended to preclude. *Lee,* 22 F.3d at 739–40. The inquiry necessary to resolve the factual disputes arising out of the potentially sweeping allegations of a criminal complaint would likely plunge the sentencing court into the very "elaborate fact finding process" the Supreme Court discouraged in *Taylor v. United States,* 495 U.S. 575, 601, 110 S.Ct. 2143, 2159, 109 L.Ed.2d 607 (1990). We believe it is preferable to maintain the approach established in *Lee* and followed by most of the other circuits.

We acknowledge that in some states the criminal complaint may be the only charging document, even for felonies. [*See* Dissent at 1088.] How to proceed in such situations given *Lee* is unclear in the abstract. Obviously the sentencing court must review some charging document. What steps will be necessary to avoid the mini-trial the Guidelines clearly intended to foreclose is not apparent from our present vantage point. Without the benefit of briefing on this issue, we leave the matter for another day. For now it is enough that under the facts of this case *Lee*'s holding remains valid.

sion of law" and does not indicate as a "matter of fact" that there was no consent); *Duane N. v. Natalie T.,* 182 Wis.2d 395, 513 N.W.2d 669, 673 (App.1994) (affirming conclusion in *J.J.G.*); *Loveridge,* 468 N.W.2d at 153 ("Sexual contact between an adult and a 16– or 17–year–old is not

substantially certain to harm the psychological and emotional well-being of the 16– or 17–year old.... [Source cited by dissenting opinion] clearly is not discussing the consequences of a 16– or 17–year–old having *consensual* sexual contact with an adult.") (emphasis added).

## B. *Upward Departure for Uncharged Murder*

■ Though never charged or arrested, the district court found that in 1991 Shannon murdered Randi Majors in cold blood on a Racine, Wisconsin street. On that basis, the court departed upward from the Sentencing Guidelines, increasing Shannon's sentence to 115 months from a Guidelines maximum of 71. Shannon challenges the factual basis of this decision. The evidence for the murder was substantial, though perhaps not enough to convince a jury beyond a reasonable doubt, which may explain why Shannon was not prosecuted. No matter. For sentencing purposes, the government only had to prove the crime by a preponderance of the evidence. *United States v. Walls,* 80 F.3d 238, 241 (7th Cir.1996); *McMillan v. Pennsylvania,* 477 U.S. 79, 91 [106 S.Ct. 2411, 2418–19, 91 L.Ed.2d 67] (1986). On appeal we review the district court's finding for clear error. *United States v. Willey,* 985 F.2d 1342, 1349 (7th Cir.1993).

■ At the hearing, Christal Lee, Shannon's erstwhile girlfriend and the mother of his daughter, testified that very soon after Majors was slain Shannon described to her the deed in great detail. She maintained Shannon bragged about shooting Majors in the back of the head. (Majors was in fact shot in the back of the head.) Shannon also gave Lee important details about his efforts to escape detection. He said he threw the gun into a lake and immediately returned to a party so he would have an alibi, and that he spent about an hour scrubbing gunpowder off his hands. Then at one point in their conversation, Shannon referred to a corner on State Street in Racine as "my corner," leaving Lee with the impression that the killing had occurred on State Street—which was true. Lee testified she warned Shannon not to talk about the killing and that later Shannon issued the same warning to her accompanied by a threat to kill her or take her daughter if she talked. Cross-examination did not reveal any important inconsistencies in Lee's account.

Next, Bennie Nunn, the victim's cousin, testified that he was walking alongside Majors when two men came upon them from behind, shot Majors in the back of the head, and fled. Nunn claimed that from a distance of about two feet, he clearly saw the face of one of the killers when the man turned to look at him before running away. Cross-examination revealed that Nunn's statements to the police immediately following the shooting did not point to Shannon. Nunn described the killer as an Hispanic (Shannon is black) and picked another man out of a photo lineup. However, Nunn testified that later, while incarcerated in a Wisconsin State prison, he recognized Shannon as the killer because of Shannon's distinctive "floating" eye. Apparently a botched childhood cataract surgery left Shannon blind in his left eye. Nunn reported this to the Racine Police Department.

Finally, the government submitted a statement given by Ben Anderson to the Racine Police Department about ten months after Majors was murdered in which Anderson claimed Shannon admitted to the murder. Anderson refused to testify at the sentencing hearing claiming he was afraid for his life. At the hearing Shannon's attorney disparaged Anderson's absence and questioned the statement's probative value.

For its part, the defense first called SaRhonda Shannon, Shannon's little sister, to testify that contrary to an earlier statement by Lee, she was not in the car when her brother allegedly told Lee about the murder. In her testimony, Lee admitted she had been mistaken on that point. SaRhonda also testified that she was unaware of threats made by Shannon to Lee. Next, Shannon's mother, Margaret Smith, testified that Lee was not afraid to leave her daughter with Shannon and that even after his confession Lee still wanted to marry him. This presumably was intended to cast doubt on Lee's testimony that she feared Shannon after he threatened to kill her if she talked. It appears that the defense also submitted a statement by one Joyce Logan, an eyewitness to the shooting, indicating that two men ran away from the murder scene and that one was an Hispanic male. Like Nunn, Logan twice failed to pick Shannon out of a photographic lineup. The government countered this by noting that Logan had previously named the offender as

"Fabian," the son of "Margaret Shannon, a black female."

After reviewing all the evidence and observing the demeanor of the various witnesses, the district court found that the accounts of the government witnesses were essentially consistent with the known facts about Shannon and the murder and that neither Lee nor Nunn had any incentive to fabricate their stories; indeed, as the mother of his child, Lee had several reasons to lie on Shannon's behalf. The district judge indicated he was impressed by the detail Lee gave of the murder and Shannon's actions in its aftermath. Further, testimony from Shannon's sister and mother did nothing to undermine the evidence against him. Conceding the evidence was not overwhelming, the court nevertheless concluded that the preponderance of the evidence indicated Shannon was involved in the shooting.

■ This determination was not clearly erroneous. The evidence against Shannon included an eyewitness account and Shannon's own admissions as reported by a former girlfriend and mother of his daughter. Virtually no countervailing evidence was presented on Shannon's behalf, just a few snipes at the details of the opposing witnesses' accounts. The credibility of the government's witnesses was obviously critical to the court's determination. Thus, it is significant that the court explicitly found them credible. We owe the credibility findings of a district court "particular deference" because of its "unique opportunity to hear testimony and observe the demeanor of the witnesses." *United States v. McNeal,* 77 F.3d 938, 946 (7th Cir. 1996); *United States v. Sullivan,* 903 F.2d 1093, 1096 (7th Cir.1990). In short, credible evidence indicated Shannon's guilt and essentially none supported his innocence. We have no reason to upset the district court's finding on this matter.

### C. Law of the Case Doctrine

Prior to sentencing on his second plea agreement, Shannon moved the district court to reopen the factual determinations reached at the December 15 sentencing hearing under the first plea agreement. The court declined, invoking the doctrine of law of the case. On appeal, Shannon attacks this ruling as it relates to the obstruction of justice finding.

At the December 15 sentencing hearing, the government sought an eight-level increase in the offense level for the obstruction of justice count (Count II) based on evidence that Shannon had "threaten[ed] to cause physical injury to a person ... in order to obstruct the administration of justice." USSG § 2J1.2(b). The government also sought a two-level increase for the same conduct under § 3C1.1 for the gun charge (Count I). The district judge reviewed the PSR and heard arguments from both sides regarding the report's reliability and coherence on the obstruction issue. The first PSR stated that while Shannon was in custody for illegal possession of a gun, he and a friend, JoAnne Berryhill, via a three-party telephone call, tried to convince a witness to ignore a subpoena and refuse to testify against Shannon. When despite their efforts the witness said she would testify, Shannon reportedly told her that was the wrong decision and stated, "You'll get yours." He said both she and her boyfriend, a witness who also planned to testify, would regret their decisions. Although unable to recall any specific threats, Berryhill admitted the tone of the conversation was threatening. Telephone records verify the calls.

Shannon contested these findings, specifically denying he threatened anyone, but he did not offer any evidence in contradiction. The government argued in support of the PSR. After hearing both sides, the district judge gave an in-depth analysis of the evidence and a detailed explanation as to why he was concluding by a preponderance of the evidence that Shannon had indeed threatened a witness.

Under the second plea agreement the obstruction count was dropped, so the eight-level enhancement for obstruction through threats under § 2J1.2(b) was no longer in play. But the second PSR contained the exact same facts concerning obstruction as the first because Shannon still faced a two-level enhancement for obstruction (with or without threats) under § 3C1.1. In a motion

prior to the final sentencing hearing on June 2, 1995, Shannon argued that the obstruction question should be reopened because the withdrawal of the original guilty plea had vitiated the findings of the prior hearing. He further argued that the earlier hearing had addressed only whether threats had been made for purposes of § 2J1.2(b), not for § 3C1.1. Shannon sought to present additional arguments and a supposedly new statement from JoAnne Berryhill to the effect that Shannon never told her to threaten Christine Cadirci. As noted, the court relied on its previous finding and denied the motion as contrary to the law of the case. On appeal Shannon claims he also would have testified that he did not threaten or cause anyone else to influence or threaten a witness. We are unable to locate Shannon's offer to testify in the record of the proceedings below; it appears this matter was first mentioned on appeal.

 The law of the case doctrine has "developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4478 (1981). In *Messenger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912), Justice Holmes noted that the doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided." More recently this court stated: "The doctrine of law of the case establishes a presumption that a ruling made at one stage of a lawsuit will be adhered to throughout the suit." *Avitia v. Metropolitan Club of Chicago, Inc.,* 49 F.3d 1219, 1227 (7th Cir.1995). Yet the doctrine is not a straightjacket. "[I]t is clear that all federal courts retain power to reconsider [issues] if they wish. Law of the case principles ... are a matter of practice that rests on good sense and the desire to protect both court and parties against the burdens of repeated reargument by indefatigable diehards." Wright, Miller & Cooper, § 4478. The doctrine applies to criminal cases, *United States v. Nechy,* 827 F.2d 1161, 1164 (7th Cir.1987), and has been employed in the sentencing context. *United States v. Mazak,* 789 F.2d 580, 581 (7th Cir.1986). The question before us is whether, under the particular facts of this case, the district court improperly applied the doctrine. Our review is for abuse of discretion. *Avitia,* 49 F.3d at 1228 (7th Cir.1995).

 The district court's original ruling adopted the findings of the first PSR without an evidentiary hearing. This was entirely proper. It is well established that "[a] defendant cannot show that a PSR is inaccurate by simply denying the PSR's truth. Instead, beyond such a bare denial, he must produce some evidence that calls the reliability or correctness of the alleged facts into question." *United States v. Mustread,* 42 F.3d 1097, 1102 (7th Cir.1994) (quotation marks omitted); *United States v. Coonce,* 961 F.2d 1268, 1280 (7th Cir.1992). Shannon did not proffer any contradictory evidence on this issue at the first sentencing hearing. Thus the district judge was within bounds to adopt the findings of the first PSR.

 This factual ruling did not cease to be the law of the case when the first plea was withdrawn. Withdrawing the plea did not alter the fact that this was still one "case," one proceeding to resolve a matter of criminal law. Of course, if a plea is withdrawn the conclusions of a sentencing hearing *may* become irrelevant—after an acquittal, for instance, there is no continuing case to which prior sentencing determinations (now moot) would apply. And when the trial court permits a guilty plea to be withdrawn the prior plea and transcripts of the arraignment proceedings where the guilty plea was made are not admissible at trial to prove the defendant's guilt. In that sense, "the entire proceedings of *entering the plea* are a nullity." *United States v. Long,* 323 F.2d 468, 472 (6th Cir.1963) (emphasis added). But neither of these situations is the case here. The obstruction of justice findings related not only to sentencing for Count II (under § 2J1.2(b)), for which a guilty plea was withdrawn, but to Count I (under the lesser standard of § 3C1.1), for which Shannon ultimately pleaded guilty. Moreover, the government has not sought to use the prior guilty plea on the obstruction charge to secure an enhancement.

In sum, at the first sentencing hearing the court found by the preponderance of the evidence that Shannon had threatened a witness with violence in an effort to prevent her from testifying against him. Since it was also relevant to sentencing under the second plea, the withdrawal of the first plea left this finding intact as the law of the case. Absent previously unavailable evidence, or some other unusual circumstance or compelling reason, *see Wzorek v. City of Chicago*, 906 F.2d 1180, 1185 (7th Cir.1990), the court was not required to revisit the issue for purposes of sentencing on the new guilty plea. The second hearing entailed the same legal question (obstruction) on the same set of facts, with the same parties: a paradigmatic situation for application of the doctrine of law of the case.

 It is worth noting that even if the obstruction matter had been fully revisited at the June 2 sentencing hearing, the outcome would have been the same. The second PSR contained the exact same allegations on the obstruction issue as the first; nothing new was added. The only significant difference was that the facts now related solely to the potential two-level increase under § 3C1.1 instead of also to the potential eight-level increase under § 2J1.2(b) which would have applied to Count II. Despite his request to reopen the issue, Shannon did not proffer any new evidence "call[ing] the reliability or correctness of the alleged facts [in the PSR] into question." *Mustread*, 42 F.3d at 1102. He merely pointed out that Berryhill's rendition of the events did not mean she heard Shannon threaten a witness. That was hardly a retraction, as the district judge noted in response; Berryhill had always denied hearing an actual threat. At any rate, the point was irrelevant: obstruction of justice under § 3C1.1 does not require a threat. Overwhelming evidence established that Shannon attempted to persuade a subpoenaed witness not to testify. Under § 3C1.1, that alone is enough for a two-level enhancement. USSG § 3C1.1, comment. (n. 3(a) & 3(i)). Therefore revisiting the obstruction question would have yielded the same result. The district judge did not abuse his discretion in relying on his prior finding.

### III.

The district court did not err in determining that Shannon was involved in a prior uncharged homicide or in its application of the doctrine of law of the case to its earlier factual rulings. However, under the facts of this case, the court improperly found that for purposes of the Sentencing Guidelines Shannon's conviction for statutory rape constituted a prior conviction for a violent crime. Therefore, we VACATE Shannon's sentence and REMAND for sentencing consistent with this opinion.

COFFEY, Circuit Judge, concurring and dissenting.

I agree with the majority's decision in two respects. I agree that the district court did not commit clear error when it found that Shannon's involvement in a prior uncharged homicide warranted an upward departure. Likewise, I concur in the judgment that the district court did not abuse its discretion in applying the doctrine of the law of the case. I dissent because I am convinced that Shannon's Wisconsin state court conviction for the felony charge of second-degree sexual assault of a child represents a prior conviction for a "crime of violence" under § 4B1.2(1)(ii) of the Guidelines, and I do not share the majority's view that conduct outlined in a criminal complaint is *per se* "off bounds" for purposes of assessing the nature of a prior conviction. I would affirm the defendant's sentence and hold that the district court's action was proper in taking into consideration the sexual assault conviction in calculating his offense level.

### I. BACKGROUND

The defendant, Defabian Shannon, was indicted by a federal grand jury in 1994 and charged with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and one count of intimidating a witness, in violation of 18 U.S.C. § 1512(b)(1). Ultimately, Shannon entered a plea of guilty to the firearm charge and the Government dismissed the intimidation of a witness count, pursuant to a plea agreement. In cases such as Shannon's, where the of-

fense charged was the unlawful possession of a firearm by a felon, the Guidelines authorize an increase in offense level if the defendant has one or more prior felony convictions for a "crime of violence." U.S.S.G. § 2K2.1. The term "crime of violence" is defined in § 4B1.2 as "any offense under federal or state law punishable by imprisonment for a term exceeding one year that ... involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2.[1] The sentencing judge found, as a matter of law, that Shannon's 1992 Wisconsin conviction for second-degree sexual assault of a child (which resulted in a sentence of three years in state prison) represented a prior conviction for a "crime of violence" and thus warranted an enhancement in Shannon's offense level. The court based its "crime of violence" determination on the nature of the sexual assault crime, observing that the crime "presents a serious potential risk of physical injury." The facts pertaining to the sexual assault crime were set forth in the criminal complaint on file, a fundamental part of the record in the Wisconsin proceedings, and these same facts (as related in the complaint) were also made a part of the defendant's Presentence Investigation Report ("PSR"), an integral document in federal sentencing proceedings. The judge, in sentencing, declined to consider any of the *actual* violence surrounding the commission of the crime, assuming, based on representations made by the defendant Shannon as well as the Government, that the "crime of violence" inquiry was limited only to those facts set forth in the information under this circuit's decision in *United States v. Lee,* 22 F.3d 736 (7th Cir.1994).

## II. ISSUES

The majority holds that Shannon's prior conviction for the second-degree sexual as-

sault of a child, a felony under the Wisconsin Criminal Code, is not a "crime of violence" within the meaning of § 4B1.2. In support of this holding, my colleagues assert that (1) the district court erred, as a matter of law, when it concluded that the crime was a "crime of violence," and (2) the sentencing judge was barred from considering any of the violent conduct set forth in the criminal complaint against Shannon and incorporated in his PSR. I disagree with each of these assertions.

## III. ANALYSIS

A. *The Second–Degree Sexual Assault of a Child in Wisconsin is a "Crime of Violence" as a Matter of Law.*

The sentencing judge concluded that Shannon's Wisconsin conviction for second-degree sexual assault of a child (inaccurately referred to as "statutory rape" in the majority opinion) met the definition of "crime of violence" set forth in § 4B1.2. I would affirm the trial court because I have no doubt that its determination was proper as a matter of law.

The felony of which Shannon was convicted, second-degree sexual assault of a child, is unmistakably considered a "crime of violence" under Wisconsin law. In the state of Wisconsin, "[w]hoever has sexual contact or sexual intercourse with a person who has not attained the age of 16 years" is guilty of the felony of second-degree sexual assault of a child and may be imprisoned for as long as twenty years and fined up to $10,000. Wis. Stat. Ann. §§ 948.02(2), 939.50. The legislative history of this statutory crime in the state of Wisconsin demonstrates that the sexual assault of a child has long been considered a violent offense. Although the majority attempts to downplay the seriousness of this crime by describing it (inaccurately) as

---

1. The majority observes, in a footnote, that "[n]either party raised the possibility that Shannon's conviction ... may not be a prior felony conviction at all due to his age [17] at the time of the crime." Maj. Op. at 1071. Under § 4B1.2 of the Guidelines, a prior felony conviction for a crime of violence must be an *adult* conviction, i.e., the defendant must have been 18 years of age at the time of the offense *or* his conviction must have been "classified as an adult conviction

under the laws of the jurisdiction in which [he] was convicted." U.S.S.G. § 4B1.2. In Wisconsin, a person who is under the age of 18 but who (like Shannon) commits a crime after his 16th birthday may be tried as an adult. Wis. Stat. Ann. § 48.18. The defendant's 1992 sexual assault conviction is listed as an adult criminal conviction (as opposed to a juvenile adjudication) in his PSR, and there is no evidence to the contrary in the record before us.

"statutory rape,"[2] I find it noteworthy that for some twenty-one years, since 1975, the crime has been classified in the Wisconsin Criminal Code as sexual *assault* (before that time the same basic crime was referred to as "sexual intercourse with a child"; *see* Wis. Stats. § 944.10 (1955)). The dictionary defines "assault" as "a *violent* attack," and indeed that is how the term is commonly understood. Webster's Third New International Dictionary (1981) 130 (emphasis added). The majority argues that "the word 'assault' in Wisconsin bears several legal meanings, not all of which entail violence." Maj. Op. at 1070. In support of this proposition, the majority argues that fourth-degree sexual assault in Wisconsin (not sexual assault of a child, but of an adult) "encompasses even the slightest intentional sexual touching." I fail to understand how this example supports the majority's argument, for, in my mind, any intentional and uninvited sexual touching is undoubtedly a form of violence, even if it does not result in physical harm. The majority's reasoning is similar to comparing a mouse to a raccoon. They are both rodents. Any type or degree of criminal assault is a crime of violence because, in the words of the Guidelines, it "presents a serious potential *risk* of physical injury." The use of the word "assault" to characterize the crime of sexual assault of a child is, notwithstanding the majority's argument, clear evidence that the Wisconsin legislature considers the offense inherently violent; i.e., fraught (as I hope we all agree) with the potential for irreparable physical, as well as psychological, harm to a child. I do not agree with the majority that the designation of this crime as assault is a mere state-law "label," nor do I concur with their surprising argument that this designation has no bearing on the issue of whether a federal court should consider the crime violent or non-violent as a matter of law. Finally, I observe that the underlying rationale for the sexual assault statute at issue, as reflected in its legislative history, is the *legal inability of children to consent* to sexual relations (a fact overlooked in the majority's analysis, as discussed below). From 1975 until 1987, the portion of the Wisconsin Code setting forth sexual assault offenses explicitly stated an irrebuttable presumption that a person under 15 was "*incapable of consent as a matter of law*" (persons between 15 and 17 were also presumed to be incapable of consent, but this presumption could be rebutted by competent evidence). Wis. Stat. Ann. § 940.225 (1975). The inability of a child to consent to sexual relations remains part of the underlying and obvious rationale for the state of Wisconsin's sexual assault of a child statute, despite the fact that the aforementioned language concerning the inability of children to consent to sex is no longer explicitly set forth in the Criminal Code.[3]

The Wisconsin legislature has most recently adopted a "sexual predator law," which is also found in the Criminal Code, in a separate section, *setting forth a definition of "sexually violent offense" that includes, interestingly, the crime of second-degree sexual assault of a child.* Wis. Stat. Ann. § 980.01 et seq. (West.Supp.1995). Enacted in 1993 and recently upheld by the Wisconsin Supreme Court, the sexual predator law resembles legislation that has been enacted in a

**2.** The term "statutory rape" has not been employed in the Wisconsin Criminal Code during the past forty years and, similarly, does not appear in the Federal Sentencing Guidelines.

**3.** From 1975 until 1987, the crime of sexually assaulting a child was part of a statute that outlawed the sexual assault of *both* children and adults. Wis. Stat. Ann. § 940.225 (1975). This statute was found in Chapter 940 of the Wisconsin Criminal Code, entitled "Crimes Against Life and Bodily Security" (once again demonstrating that the offense was considered violent). Under § 940.225(2)(e), second-degree sexual assault included "sexual contact or intercourse with a

person who is over the age of twelve years and under the age of 18 years *without consent of that person.*" Wis. Stat. Ann. § 940.225 (1975). In 1987, the legislature decided to consolidate all statutory crimes against children in a new, separate chapter of the Criminal Code (Chapter 948). As part of this 1987 re-codification of statutes involving child-victims, the portions of the sexual assault statute pertaining to children were transferred to new Chapter 948, which included the crimes of first- and second-degree sexual assault *of a child* (Shannon was convicted of violating § 948.02(2) based on his assault of the victim in 1991).

number of states[4] in order to protect society from danger and harm at the hands of convicted sex-crime offenders. Juliet M. Dupuy, Comment, *The Evolution of Wisconsin's Sexual Predator Law*, 79 Marq. L.Rev. 873 (1996); *State v. Carpenter*, 197 Wis.2d 252, 271, 541 N.W.2d 105 (1995) ("[T]he principal purposes of ch. 980 are the protection of the public and the treatment of sex offenders who are at a high risk to reoffend in order to reduce the likelihood that they will engage in such conduct in the future."); *State v. Post*, 197 Wis.2d 279, 541 N.W.2d 115 (1995).[5] The Wisconsin statute sets forth procedures, including proper legal safeguards, for the involuntary commitment of sex-offenders who have previously served prison time for crimes but who are found, on the basis of expert medical (psychiatric) evidence, to be "sexually *violent* persons" and presently unfit for return to society. Wis. Stat. Ann. § 980.05. A "sexually *violent* person" is defined as a person who has been convicted of a "sexually *violent* offense" and who is shown, beyond a reasonable doubt, to be "dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." Wis. Stat. Ann. § 980.01(7). *The new law states in clear and unambiguous language that the second-degree sexual assault of a child is a "sexually violent offense."* Wis. Stat. Ann. § 980.01(6)(a). Thus, it is unmistakably clear that the Wisconsin legislature has determined that the crime of second-degree sexual assault of a child is a *"crime of violence."*

The majority incorrectly characterizes the sexual predator law, which is found in the Criminal Code, as a "civil statute," apparently believing that if the statute were civil, somehow that would make it a less persuasive indicator of the legislature's obvious judgment concerning the nature of second-degree sexual assault of a child. The commitment proceedings authorized by the law are civil in nature, for if they were otherwise the law might very well be held to violate the constitutional prohibition against double jeopardy. *See Carpenter*, 197 Wis.2d 252, 541 N.W.2d 105 (Ch. 980 does *not* violate the double jeopardy clause of either the federal constitution or the constitution of the state of Wisconsin). However, in order to be subject to the law's provisions, one must first have been found guilty of a sexually violent crime (i.e., a convicted sex-offender). Furthermore, although the majority erroneously describes the sexual predator law as a "civil statute," I note that the commitment procedures established by the law afford the convicted sex offender many of the safeguards traditionally present in a criminal trial, including the requirement that an individual's status as a "sexually violent person" be established "beyond a reasonable doubt," the right to be represented by counsel, the right to remain silent, the right to present and cross-examine witnesses, the right to have the commitment hearing recorded, and the right to request a jury of twelve which must arrive at a unanimous verdict. *See Post*, 197 Wis.2d at 299, 541 N.W.2d 115 (summarizing procedural aspects of the law).

The majority also appears to argue that we may not consider Wisconsin's sexual predator law, with its explicit definition of second-degree sexual assault of a child as a "sexually violent offense," because the law became effective in 1994, *after* Shannon was convicted of second-degree sexual assault. I note, first of all, that the law, by its very terms, applies to a person deemed sexually violent "regardless of whether the person engaged in acts of sexual violence *before*, on or after June 2,

---

**4.** States which provide a procedure for the involuntary commitment of sex offenders after they have served their criminal sentences include (in addition to Wisconsin): Arizona, Kansas, Minnesota, New Jersey, Washington. Ariz.Rev.Stat. Ann. § 13–4601 (1995); Kan. Stat. Ann. § 59–2901 (1994); Minn.Stat. Ann. § 244.05 (1993); N.J.Rev.Stat. § 2:47–3 (1995); Wash. Rev.Code § 71.09.05 (1990).

**5.** A recent report prepared by the State of Wisconsin Legislative Reference Bureau notes that:

> In addition to physical injury and pain, sexual crimes can result in psychological damage from which the victims may never fully recover. [C]rimes involving sexual acts inflicted on children or nonconsenting adults are vigorously prosecuted and harshly punished [in Wisconsin].

*Sex Crimes and Penalties in Wisconsin,* Informational Bulletin 96–4 (August 1996).

1994 [the effective date of the legislation]." Wis. Stat. Ann. § 980.13. The Wisconsin Supreme Court, furthermore, has recently held that the sexual predator law does not violate the *ex post facto* clause. *Carpenter*, 197 Wis.2d at 274, 541 N.W.2d 105 (1995) ("ch. 980 is not an *ex post facto* law"). In their attempt to downplay the unambiguous language in the sexual predator law and the impact of the same on § 948.02 of the Wisconsin statutes, the majority focuses on matters such as the effective date of the legislation. I wish to emphasize that we are not called upon and thus have no interest in determining Shannon's eligibility for civil commitment under the sexual predator law. Instead, we only engage in discussion of the sexual predator law in order that we might properly determine whether the second-degree sexual assault of a child is a "crime of violence." The Wisconsin legislature has once again answered this question by defining the crime as a "sexually violent offense" in the sexual predator law, and the effective date of the legislation is, for our purposes, irrelevant.

The majority's discussion of Wisconsin law unfortunately gives short shrift to the clear and compelling evidence, discussed above, that Wisconsin's duly-elected representatives classified sexual assault of a child as a violent crime. Evidently, the majority considers the principle of "uniformity in sentencing" of greater importance than the constitutional principle of federal-state comity. According to the majority, we should be willing to decide the issue before us "independently" of state-law determinations concerning the nature of the sexual assault crime; or in other words, federal law *always* supersedes state law. The approach favored by the majority says to the members of the Wisconsin legislature, and to the citizens of Wisconsin, that the statute *they* enacted into law (sexual *assault* of a child) is really *not* a crime of violence, despite the legislature's clear and unambiguous determination to the contrary. Such an unwarranted assault on a state law,

in the absence of a constitutional challenge, is at best most inappropriate. *EEOC v. City of Janesville*, 630 F.2d 1254, 1259 (7th Cir.1980) ("That the wisdom of a legislative act is not subject to judicial scrutiny requires no citation."); *Corgain v. Miller*, 708 F.2d 1241, 1254 n. 10 (7th Cir.1983) ("[W]e cannot compel states to do what we might believe is wise and salutary."). The Wisconsin law at issue here concerns sexual morality and violence, and as we are all aware, sexual mores vary greatly from one state to another. For this reason, deference to state law is all the more imperative. In the words of Justice Harlan, "the domain of sexual morality is pre-eminently a matter of state concern" and accordingly, a federal court "should be slow to interfere with state legislation calculated to protect that morality." *Roth v. United States*, 354 U.S. 476, 502, 77 S.Ct. 1304, 1318, 1 L.Ed.2d 1498 (1957) (Harlan, J. concurring, dissenting on other grounds); *see also Miller v. Civil City of South Bend*, 904 F.2d 1081, 1106 (7th Cir.1990) (Coffey, J., dissenting) ("If at all possible, the courts should give effect to the will of the people" when considering state legislation that touches upon questions of morality).

Although, in my opinion, the discussion of Wisconsin law set forth above is more than sufficient to resolve the issue before us, federal case law concerning similar "crimes of violence" from other jurisdictions, as well as expert medical opinion regarding the impact of sexual activity upon children, provide additional support for the conclusion that the second-degree sexual assault of a child is an inherently violent crime (i.e., one that poses a serious risk of harm to its child victims). The Seventh Circuit has not had occasion, until today, to consider whether the second-degree sexual assault of a child, as defined in Wisconsin, constitutes a "crime of violence" for purposes of the Sentencing Guidelines. In *United States v. Rodriguez*, however, the Eighth Circuit held that an Iowa conviction for lascivious acts with a child [6] constituted a "crime of violence" within the meaning of the

---

**6.** The Iowa statute at issue in *Rodriguez* is analogous to the Wisconsin sexual assault statute under consideration in the instant case. The Iowa law makes it a felony for a person 18 years of age or older to engage in specified sexual acts with a

child "with or without the child's consent." Iowa Code § 709.8. A child, for purposes of the statute, is defined as "any person under the age of fourteen years." Iowa Code § 702.5.

Guidelines. 979 F.2d 138, 141 (8th Cir.1992). The court in *Rodriguez* stated, correctly in my view, that "the [formal] elements of the underlying offense need not include use, attempted use, or threatened use of force to be considered a 'crime of violence.'" *Id.* The Eighth Circuit reasoned that the proper focus should be on the *nature* of the crime, i.e., whether the crime "by [its] nature involv[ed] a substantial risk of physical force." *Id.* With respect to the crime of lascivious acts with children, the court had no difficulty finding that the crime was by its nature a violent one. The Eighth Circuit has reaffirmed its holding in *Rodriguez* and stated that the reasoning of that case applies with equal force to an Iowa conviction for statutory rape. *United States v. Bauer*, 990 F.2d at 375.[7] I would follow the Eight Circuit's straightforward, common-sense approach to this issue and, focusing on the *nature* of the offense, hold that second-degree sexual assault of a child in Wisconsin is a crime of violence.

The majority argues that because "there is no 'element' of force, threatened or otherwise, in the crime [of second-degree sexual assault]," the crime may not be considered a crime of violence under the definition set forth in § 4B1.2. Maj. Op. at 1068. The majority's argument demonstrates, in the first instance, a blatant disregard for the intentions of the duly-elected representatives of the people of Wisconsin (members of the legislature), who have, as previously discussed, made a legislatively-reasoned determination that the sexual assault of a child is indeed a violent sex offense, even if the use of force is not a formal "element" of the crime. Additionally, the majority's argument reflects a narrow (and mistaken) reading of the Guidelines' definition of "crime of violence." It is true that only "forcible sex offenses" are listed as an example of a "crime of violence" in the commentary accompanying § 4B1.2. However, as the district court realized, the definition of "crime of violence" encompasses, in addition to forcible sex crimes and other specifically-listed crimes, *any* crime that "*otherwise involves conduct that presents a serious potential risk of physical injury to another.*" U.S.S.G. § 4B1.2(1)(ii). Second-degree sexual assault of a child, as set forth in § 948.02 of the Wisconsin statutes, entails such a risk of physical injury, *to say nothing of the grave and often lasting psychological harm inherent in such base and unlawful activity with a child.*[8] There is, first of all, a risk of physical trauma to the child arising from the act of sexual contact or intercourse itself. Secondly, as the Government argues persuasively in this case, there is an ever-present risk that the child will resist sexual contact, and force and sometimes even death follows in order that the criminal is successful in compelling the child to engage in sexual activity. The Tenth Circuit has stated, and properly in my view, that "[a] common sense view of the sexual abuse statute, in combination with the legal determination that children are incapable of giving consent, suggests that when an older person attempts to sexually touch a child ... there is *always* a

7. The Iowa statute at issue in the *Bauer* case was a rape statute that made it unlawful for "any person [to] carnally know and abuse any *female* child under the age of sixteen years." Iowa Code § 698.1 (repealed 1976) (current version at Iowa Code § 709.4). Despite some differences between the Iowa statute and the Wisconsin sexual assault law not relevant to this discussion, both statutes criminalize sexual relations with children below the age of sixteen. Significantly, the Eighth Circuit found the Iowa crime a "crime of violence" in spite of the fact that the Iowa legislature did not explicitly classify the crime as a "violent" offense, as Wisconsin has done with respect to second-degree sexual assault of a child.

8. For a discussion of the "psychologic and social risks of early sexual intercourse in adolescents," see Beth Alexander et al., Adolescent Sexuality Issues in Office Practice, 44 *American Family Physician* 1273 (Oct. 1, 1991). If the language of § 4B1.2(1)(ii) did not limit our inquiry to the risk of *physical* injury, I would certainly discuss, at greater length, *the psychological violence inherent in the crime of second-degree sexual assault of a child. The term "violence," when it is not otherwise modified or limited, encompasses serious psychological injury as well as physical harm. Even in the absence of physical injury, "the very nature of the crime of sexual assault against young children results in severe emotional and psychological damage which constitutes violence."* State ex rel. Spaulding v. Watt, 188 W.Va. 124, 423 S.E.2d 217, 218–19 (1992); *see also People v. Hetherington*, 154 Cal.App.3d 1132, 201 Cal.Rptr. 756, 760 (1984).

substantial risk that physical force will be used to ensure the child's compliance." *United States v. Reyes–Castro,* 13 F.3d 377, 379 (10th Cir.1993) (emphasis added); *see also United States v. Wood,* 52 F.3d 272, 275 (9th Cir.1995). Finally, I observe that children, because of their emotional and intellectual immaturity, are incapable of adequately assessing the dangers inherent in sexual activity and thus are at greater risk of *physical* harm in the form of pregnancy, sexually transmitted diseases, and AIDS. Medical experts confirm that "[p]sychosexual, psychosocial, and cognitive immaturity make adolescents highly vulnerable to the adverse consequences of sexual activity." Lawrence E. Kay, M.D., Adolescent Sexual Intercourse: Strategies for Promoting Abstinence in Teens, 97 *Postgraduate Medicine* 121 (June 1, 1995) (and studies cited therein).

Contrary to the majority's argument, our case law establishes that "offenses that do not include the use of force as an element" may nevertheless be crimes of violence if, *"by their nature, [they] create an inherent risk that force will be used...."* *United States v. Rutherford,* 54 F.3d 370, 373 n. 8 (7th Cir. 1995). Indeed, this is nothing more than a restatement of the language of § 4B1.2, discussed above, which says that the term *"crime of violence"* includes any offense that *"otherwise involves conduct that presents a serious potential risk of physical injury to another."* The very broad Guidelines definition of "crime of violence" has permitted this court to hold that drunk driving is a "crime of violence" for sentencing purposes, even though driving while intoxicated is not listed in § 4B1.2 and does not mandate a finding of force or violence as one of its elements. *Id.* at 374. It seems rather absurd that following today's majority decision, driving while intoxicated will be considered a "crime of violence" in federal law in this circuit, but the crime of second-degree sexual assault of a child in Wisconsin will not be considered a violent crime.

The majority agrees with the foregoing analysis as applied to very young children (e.g., the ten year-old victim in *Rodriguez*), "given how easily their young bodies and minds can be damaged, and in light of the coercion *naturally attending* sexual acts with small children." Maj. Op. at 1070 (emphasis added). In an attempt to justify its decision, however, the majority argues that second-degree sexual assault of a child is not *always* or *inherently* a "crime of violence," particularly in cases involving "consenting" teenagers where the perpetrator is only slightly older than the victim and the encounter results in no "bodily harm." The majority sets up a straw man with their own created hypothetical example that could hardly be farther from the facts of this case: a boy one day over age sixteen having sexual relations with his girlfriend on the night before her sixteenth birthday (I note that this example amounts to trying to put a round peg in a square hole, for the age difference between Shannon and his victim was more than three years). Although the majority states that such activity is "immoral and criminal," it goes on to assert that encounters of this kind are often "nonviolent, non-coercive" and result in "no bodily injury." Therefore, notwithstanding the fact that Wisconsin mandates that the sexual assault of a child under 16 years of age be considered a "sexually *violent* offense," and even though the complaint filed against Shannon clearly establishes that violence was used, the majority claims that a federal sentencing court may not consider the crime of which Shannon was convicted as a "crime of violence." I disagree.

In my view, the majority's argument is based upon a fundamental misunderstanding of the Wisconsin statute governing sexual assault of children, a law which clearly flows from a legislative determination that children below a designated age (16 years) are *incapable of giving consent* to participate in any type of sexual contact. The Wisconsin legislature has set age limits and established more severe penalties for sexual contact with a child under the age of thirteen (which it classifies as first-degree sexual assault of a child) than for similar contact with a child under the age of sixteen years. However, whether the victim is two, ten, thirteen, or just shy of sixteen years old, the crime is defined in the Wisconsin statute as *sexual assault* and is premised on the child-victim's inability to give consent to sexual contact of

any kind.[9] As a matter of both law and logic, it is impossible to argue that there is a possibility of "non-coercive" sexual interaction between an adult and a child when the law of the state establishes that the child is *per se* incapable of consenting to sexual relations. As I have pointed out previously, the majority seems to believe that the sexual assault of a child is not a crime of violence if the victim somehow subjectively believes that he or she is "consenting" to the activity. Obviously, however, the victim's ·state of mind is utterly irrelevant to the crime of sexual assault of a child (whether first or second degree) because the child-victim is under the age of 16 and is thus incapable of consenting.

The majority argues that in Wisconsin "a minor's inability to consent to sex is a legal fiction, not a fact," and asserts that the Wisconsin courts have made this "abundantly clear." Likewise, the majority must believe that a minor under 18 years can enter into a binding business contract without the consent of their parent or guardian if they have the required intent. As an initial matter, I am not certain that the majority is using the term "legal fiction" correctly, for that phrase traditionally refers to abstract propositions which the law assumes to be true (e.g., the "fiction" that a corporation is a person). I find nothing abstract or "fictitious" about Wisconsin's determination that a child is incapable of consenting to sexual relations. If indeed this is a "legal fiction," then so are numerous other legislative determinations, including, for example, the modern rule ex-

cluding evidence of a sexual assault victim's prior sexual activity in a criminal prosecution for sexual assault. Wis. Stat. Ann. § 972.11. I also note that in support of its somewhat confusing "legal fiction" argument, the majority cites three *civil* cases from Wisconsin far-removed from the criminal factual situation, one dealing with *paternity*, another with *homeowner's insurance*, and a third concerning a *parental rights determination*. Maj. Op. at 1071 and 1073. It is clear that these cases involve issues that could not be more remote from our legal question and say nothing about the issue of consent as it relates to the *crime* of sexually assaulting a child.[10]

Finally, with respect to the consent issue, the majority argues that my analysis "proves too much" because "a victim's lack of consent cannot *alone* define a crime of violence, otherwise virtually all crimes, from . . . purse-snatching to embezzlement, would be crimes of violence." Maj. Op. at 1073 (emphasis added). I believe that the majority mischaracterizes my position, which is that any crime of sexual assault, in any degree, is a crime of violence, not *just* because such crimes are nonconsensual, but also because they are classified by the sovereign state of Wisconsin as sexual *assault*, have been defined by the state's legislature as "sexually *violent* offenses," and are, in the words of the Guidelines, crimes "that present[ ] a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(1)(ii). I consider absurd the majority's argument that embezzlement, under my reasoning, could be a "crime of violence." Obviously, embezzlement and

9. *See supra*, note 3.

10. In *J.J.G. v. L.H.*, 149 Wis.2d 349, 441 N.W.2d 273 (App.1989), cited by the majority, the appellant argued that he was not capable of consenting to sexual relations at the age of 15 and therefore should not be legally responsible for supporting a child he had fathered at that age. The appellant based his argument on portions of the sexual assault statute which, at that time, created a rebuttable presumption that minors between 15 and 17 years of age were not capable of consenting to intercourse (the statute has since been amended; see discussion *supra* at 1067). The court rejected the appellant's argument and stated that the sexual assault statute "pertain[ed] to the guilt of a criminal defendant, not to the civil rights or duties of the victim" and therefore did not apply in a civil proceeding. *Id.* at 275.

The remaining cases cited by the majority involved scenarios where each of the participants in sexual activity was over sixteen. *Loveridge v. Chartier*, 161 Wis.2d 150, 468 N.W.2d 146 (1991); *Duane N. v. Natalie T.*, 182 Wis.2d 395, 513 N.W.2d 669 (App.1994). Because the victim in the case before us was a mere 13 years and 10 months of age, I fail to see the relevance of these cases. Additionally, neither of these cases support the majority's position. In *Loveridge*, the court stated, "We do not endorse or condone sexual contact between adults and minors. However, the issue in this case is insurance coverage, not the propriety of an adult and a 16– or 17–year–old engaging in consensual sexual relations." *Loveridge*, 468 N.W.2d at 153 n. 9. The second case, *Duane N.*, merely affirmed the holding in *J.J.G.* (discussed above).

many other property crimes cannot be compared to violent crimes against the person, such as sexual assault, for property crimes frequently involve no threat of physical harm and usually occur with absolutely no physical contact between the perpetrator and the victim.

The majority also argues that a sexual encounter proscribed by § 948.02 need not be considered "violent" if, in addition to being an allegedly "consensual" event, it does not result in "bodily harm." Although, as discussed above, the risk of physical and psychological harm is always present in the sexual assault of a child, the statute does not *require* proof of bodily harm as one of its elements, as is the case with the crime of battery. *See* Wis. Stat. Ann. § 940.19. In light of the Wisconsin legislature's determination that the sexual *assault* of a child is a "sexually violent offense," Wis. Stat. Ann. § 980.01(6)(a), I am of the opinion, as is the Wisconsin legislature, that the sexual assault crime in question must be considered a "crime of violence" even in the absence of proof of *actual* or threatened bodily harm.

The majority, by setting forth hypotheticals involving what they refer to as "routine" and noncoercive sexual encounters between teenagers who are close in age, and by describing the terms of the Wisconsin statute as "strict," suggests that the Wisconsin law is flawed because it neither makes distinctions based on the age of the perpetrator, nor takes account of any closeness (or disparity) in age between the perpetrator and the victim. Rather, it states simply that "*[w]hoever* has sexual contact or sexual intercourse with a person who has not attained the age of 16

years" is guilty of the crime of sexually assaulting a child. Wis. Stat. Ann. § 948.02(2) (emphasis added). The majority, going beyond the clear and emphatic terms of the statute itself, argues that when the perpetrator's age is close to that of the victim, the element of coercion or force somehow is not present and it is therefore improper to consider the crime a "crime of violence." The majority makes a determination that the crime cannot be considered a crime of violence unless there is a "significant age disparity between the defendant and his victim." [11] Maj. Op. at 1070. Evidently, the majority does not consider an age disparity of more than three years significant, and therefore concludes that there was no coercion in this case.

I take issue with the majority's unnecessary commentary on the Wisconsin law, first of all, because it takes us far afield from the facts of this case, involving a *violent* sexual encounter between a seventeen year-old perpetrator and a thirteen year-old victim. There was, contrary to the majority's assertion, a "significant age disparity" of more than three years plus between the defendant and his child-victim.[12] Although the majority states that violence "likely" attended the crime, the fact is that violence *did* attend the crime, as the criminal complaint clearly reflects.[13] More fundamentally, I object to the majority's characterization of the Wisconsin law as too "strict." Whether the terms of the statute are too strict, not strict enough, or "just right" is not a question before the court. Indeed, it is not a proper question for a federal court of appeals to even refer to, much less decide, in the absence of a consti-

**11.** This argument begs the question: Does the majority also believe that a "significant age disparity" must be present in order to establish lack of consent in a prosecution for rape (sexual assault) under § 940.225? That statute, like § 948.02, is silent on the issue of "age disparity" and this court should be reluctant to amend a state statute when the state's legislature has chosen not to do so.

**12.** A three year age plus difference may not be significant when comparing two individuals in their twenties or thirties, but it is very significant and a crime of this nature is very damaging in the developmental years of a child, for adolescence is a time of rapid physical and emotional

development. Thus, the psychological and physical differences between Shannon (17 years) and his victim, who was but a mere child of thirteen years of age, could very well have been tragic. Indeed, as discussed below, the criminal complaint reveals that Shannon used his physical strength to overpower his victim and drag her down a flight of stairs before engaging in sexual intercourse with her.

**13.** Below, I consider and reject the majority's assertion that the factual details set forth in the criminal complaint (and recounted accurately in the defendant's PSR) could not be considered by the sentencing court.

tutional challenge to the statute. *Ferguson v. Skrupa,* 372 U.S. 726, 729, 83 S.Ct. 1028, 1030, 10 L.Ed.2d 93 (1963) ("Under the system of government created by our Constitution, it is up to legislatures, not courts, to decide on the wisdom and utility of legislation."). Federal courts were created not to sit as legislative review boards, "look[ing] over the shoulder of the State Legislature with a view toward revising to [their] satisfaction every Act passed by the Legislature." *Floyd v. Thornburg,* 619 F.Supp. 756, 760 (D.C.N.C.1985). In *Miller v. Civil City of South Bend,* 904 F.2d 1081 (7th Cir.1990), this court was called upon to determine whether an Indiana law banning nude dancing was too "strict." The court struck down the law on constitutional (First Amendment) grounds, but the author of today's majority opinion wrote a dissenting opinion, which I joined, stressing the need for deference to the states within our federal system of government. That dissent rested on the sound principle that "[d]etermining the wisdom, need, or propriety of laws is the role of an elected legislature, not the federal judiciary," *id.* at 1135 (citing *Griswold v. Connecticut,* 381 U.S. 479, 481–82, 85 S.Ct. 1678, 1679–80, 14 L.Ed.2d 510 (1965), and noted that *"the elected representatives of the people of Indiana are much better suited to determining 'the desires and values' of their people than those of us who sit on this court." Id.* at 1132–33. As my colleague correctly observed in his *Miller* dissent, *"the Supreme Court has always recognized the authority of the state to legislate in the interest of protecting community morals"*; indeed, *"'a state Legislature can do whatever it sees fit to do unless it is restrained by some express prohibition in the Constitution of the United States or of the State.'" Id.* at 1133 (citing *California v. LaRue,* 409 U.S. 109, 117, 93 S.Ct. 390, 396–97, 34 L.Ed.2d 342 (1972) and quoting *Tyson & Brother v. Banton,* 273 U.S. 418, 47 S.Ct. 426, 71 L.Ed. 718 (1927)) (Holmes, J., dissenting)). I believe that the reasoning of my colleague's dissent in *Miller* is also applicable here, for the Wisconsin legislature is far more qualified than this court to determine how sexual assault should be defined within the state of Wisconsin.

Shortcomings in the law (if indeed they do exist) should be addressed to the democratically-elected Wisconsin state legislature. Courts, whether state or federal, are ill-equipped to legislate because they are "without the benefit of citizen input or a trained staff to search out, weigh, balance, and comprehend" complex and controversial social issues. *Wangen v. Ford Motor Co.,* 97 Wis.2d 260, 324–25, 294 N.W.2d 437 (1980) (Coffey, J., dissenting). It would therefore be "presumptuous for this court, which does not and cannot have the benefit of public hearings and constituent expression of opinion, to 'commend' sua sponte any specific change in [Wisconsin law]." *Id.* (quotation omitted). *See also Wisconsin Natural Gas Co. v. Ford, Bacon & Davis Constr. Co.,* 96 Wis.2d 314, 330, 291 N.W.2d 825 (1980) ("Any modification of the ... statute is best left to the legislature as they can conduct a full fact-finding hearing" and determine, after a "thorough discussion of the subject," whether any change in the law is necessary).

To summarize, I part company with the majority because I believe that the assault crime under discussion here is a "crime of violence" as a matter of law. In our capacity as a federal court of appeals, we should (in the absence of a federal constitutional question) refrain from needless criticism of Wisconsin's sexual assault statute as too "strict," and, as noted previously in this opinion, abide by the legislature's determination that a violation of § 948.02(2)—sexual *assault* of a child—is a "sexually *violent* offense." Wis. Stat. Ann. § 980.01(6)(a). Any other course of action would be inconsistent with our role as a federal court and would be an affront to the constitutional principle of federalism.

B. *When Making a "Crime of Violence" Determination Pursuant to § 4B1.2, a Sentencing Court is not Limited to the Specific Language Set Forth in an Indictment or Information.*

The criminal complaint, as explained below, is the "flesh and blood" document of the criminal proceeding and the necessary first step in any criminal prosecution in the state of Wisconsin. Notwithstanding this document's importance, the majority broadly as-

serts that a criminal complaint is "off bounds" for sentencing purposes and that a sentencing court must confine its inquiry to the language set forth in an information or indictment when assessing the nature of a prior conviction. I dissent, in part, because I disagree with this aspect of the majority's decision. I am well aware of this circuit's decision in *United States v. Lee,* 22 F.3d 736 (7th Cir.1994), but I take issue with the reasoning of the court in *Lee* that *only* an information or an indictment (and not a criminal complaint) may be considered by a sentencing judge as part of the "crime of violence" inquiry. While I realize that the parties and the sentencing judge in this case accepted the holding in *Lee* as controlling precedent,[14] I am of the opinion that *Lee* is inconsistent with both the Guidelines and Seventh Circuit case law and that we would be well-advised to reject the decision forthwith, rather than continuing to perpetuate its flawed reasoning.

Before addressing *Lee* specifically, I feel it would be helpful to briefly discuss the nature and function of a criminal complaint in Wisconsin, for unfortunately both the court in *Lee* and the majority in this case misunderstand or intentionally overlook the prominent and central role played by the complaint, which is the basic and essential charging document statutorily mandated for any felony and/or misdemeanor prosecutions in the state of Wisconsin. The filing of the complaint in a felony proceeding is typically followed by a preliminary hearing and then the filing of an *information,* which serves as the charging document for purposes of the criminal trial. In a misdemeanor prosecution, the complaint is the only charging instrument before the court and is not replaced by either an information or an indictment during the course of the criminal proceedings.[15]

"The complaint is a written statement of the essential facts constituting the offense charged. It may be made upon information and belief. It shall be made upon oath before a district attorney or judge...." Wis. Stat. Ann. § 968.01. Because the complaint in Wisconsin and many other jurisdictions is the initial charging instrument in a felony proceeding, and serves as the basis for the information, it is an essential and integral part of the record in any Wisconsin felony case. The purpose of a complaint is to establish probable cause to proceed with a criminal prosecution; thus, more often that not, it contains greater factual detail than an information. As the Supreme Court of Wisconsin has observed, "[t]he complaint is the first of many steps in a criminal prosecution" and *"[i]ts essential function is informative...."* *State v. Olson,* 75 Wis.2d 575, 250 N.W.2d 12, 17 (1977) (emphasis added). The complaint "need not state an encyclopedic listing of all evidentiary facts," yet it must state "enough information to enable a detached and neutral magistrate to make the judgment that the charges are not capricious and are sufficiently supported to bring into play the further steps of the criminal process." *State v. Williamson,* 109 Wis.2d 83, 325 N.W.2d 360, 363 (App.1982). At a minimum, the document must set forth facts that will withstand a challenge to the sufficiency of the complaint on its face before the presiding magistrate. *See, e.g., State v. Adams,* 152 Wis.2d 68, 447 N.W.2d 90 (App.1989) (upholding a criminal

14. In a brief submitted to the district court prior to sentencing, Shannon argued that under *Lee* the conduct set forth in the 1992 criminal complaint could not be considered by the sentencing court in assessing whether the Wisconsin sexual assault conviction was a crime of violence. Shannon reiterated this argument at the sentencing hearing. The United States Attorney's Office agreed with the defense concerning the limitations imposed by *Lee.* In light of the consensus among the parties regarding *Lee,* the district court understandably followed *Lee* and chose not to rely upon the complaint (or the portion of the PSR paraphrasing the complaint) to establish the "physical force and threats of force and lack of consent" (i.e., the actual violence) surrounding the sexual assault incident. As discussed above, the sentencing judge did not rely upon the evidence of actual violence in the record but found, as a matter of law, that the second-degree sexual assault of a child was an inherently violent crime and therefore a "crime of violence."

15. Wisconsin procedure with respect to complaints and informations is by no means atypical. Indeed, "[m]ost jurisdictions call the *charging document* filed in a misdemeanor case or at the first step of a felony case a 'complaint,' and the document filed to initiate trial proceedings at the second step of a felony case an 'information.'" *State Court Model Statistical Dictionary* 16 (1989).

complaint as facially sufficient). The Wisconsin courts have stated that a complaint must provide sufficient factual detail to address the so-called "Six W's." *State v. Seraphim*, 40 Wis.2d 223, 161 N.W.2d 369, 372 (1968). In other words, the complaint should answer the following questions: *"What* is the charge? *Who* is charged? *When* and *Where* is the offense alleged to have taken place? *Why* is this particular person being charged?" and *"Who* says so?" *Id.* (emphasis added).

At a preliminary hearing, the court must determine, on the basis of the complaint on file and after considering the evidence received at the hearing, whether there is "probable cause to believe that a felony has been committed by the defendant" within the jurisdiction of the court. Wis. Stat. Ann. § 970.03. If and when the court determines that probable cause exists, it will bind the defendant over for trial and the prosecutor will file an information charging the proper crime. Wis. Stat. Ann. § 971.01. "A defendant may be bound over for trial when the evidence at the preliminary hearing is sufficient to establish probable cause that a crime has been committed and that the defendant probably committed it. The probable cause that is required for a bindover is greater than that required for the issuance of an arrest warrant, but guilt beyond a reasonable doubt need not be proven." *State v. Sirisun*, 90 Wis.2d 58, 61–62, 279 N.W.2d 484 (App. 1979) (citation omitted). If probable cause is not found as to the crime set forth in the complaint, then in accordance with the evidence adduced at the preliminary hearing the prosecutor will either issue an information charging the proper felony, or charge the defendant with a misdemeanor offense (via amended complaint), or dismiss the criminal charges altogether. Wis. Stat. Ann. §§ 970.03 and 971.01. It should be clear that in the state of Wisconsin, as in many other states, no information may be filed unless it is preceded by the original charging document, the complaint.

The information is based upon and flows from the criminal complaint, and, like the complaint, it is a legal document charging the defendant with a crime. *Whitaker v. State*, 83 Wis.2d 368, 265 N.W.2d 575, 578 (1978) ("The purpose of the information is to inform the defendant of the charges against him. Notice is the key factor."). However, unlike a criminal complaint, the information need not set forth all the details of the criminal conduct, for probable cause has previously been established at the preliminary hearing (unless such a hearing has been waived pursuant to Wis. Stat. Ann. § 970.02(4)) and in effect admits that there are sufficient facts for the court to bind him over for trial and thus, the information need only allege that the defendant, at a particular time and place, committed the elements of a statutory crime within the jurisdiction of the court. Wis. Stat. Ann. § 971.03.

If I may suggest an analogy based on human anatomy: the complaint is like a living human body, complete with a bone structure, heart, lungs, blood vessels, muscles, and the like, while the information is more akin to a bare bones skeleton. The complaint is "fleshed-out" with details that give factual substance to the charges; the information is the mere "bare bones" legal framework for purposes of trial. Just as a medical doctor cannot obtain a complete picture of a person's health by looking at an x-ray of a skeleton alone, a federal sentencing court frequently fails to obtain a full picture of a prior criminal prosecution (as in this case) by referring merely to the information alone. What the court needs, in order to be fully informed for purposes of sentencing, is not a short summary of the crime setting forth the statutory elements and the statute number (as found in the information) but rather the "flesh and blood" factual details that are most usually recounted only in the charging document known as the complaint.

Both the criminal complaint and the information serve to formally charge the defendant with a crime [16] and give notice of the

---

**16.** According to the Court Statistics Project at the National Center for State Courts, most jurisdictions in the United States as of 1996 (37 out of a total of 52 jurisdictions, including the District of Columbia and Puerto Rico) consider a criminal case "filed," for *statistical* purposes, at the time an information or indictment is issued. However, five jurisdictions consider a case filed

count or counts charged, so that the defendant may prepare for the preliminary hearing and the trial, respectively. For these reasons, the words 'information' and 'complaint' are often "used synonymously" and are in effect almost interchangeable. *State v. Henry*, 83 Idaho 167, 359 P.2d 514, 516 (1961); *Black's Law Dictionary* 258 (5th ed. 1979).

The complaint and the information filed against Shannon in 1992 charged the defendant with the same sexual assault crime, and the only difference is that the complaint provided the necessary factual detail, as required under Wisconsin law. The criminal complaint (as related in the defendant's PSR) provided sufficient factual information to support the charge of sexual assault of a child; indeed, it described at some length how Shannon forced his victim into having sexual intercourse with him and left no doubt as to the violent conduct attending the crime. By contrast, the information filed in the sexual assault case charged Shannon in statutory language with a violation of § 948.02(2), alleging that he "intentionally, unlawfully and feloniously had sexual intercourse with a person who had not attained the age of Sixteen (16 years)." It was proper and not surprising that the information was more factually limited than the complaint because probable cause had been established at a preliminary hearing and Shannon had been previously bound over for trial (or, alternatively, Shannon had waived a preliminary hearing, thus admitting to the facts set forth in the complaint reciting the violent second-degree sexual assault charge).

The criminal complaint against Shannon charged him with two separate counts of criminal activity: first-degree sexual assault, in violation of § 940.225(1)(a) ("sexual contact or sexual intercourse with another person

without consent of that person ... [that] causes pregnancy or great bodily harm to that person") *and* second-degree sexual assault of a child, in violation of § 948.02(2). The information, along with the complaint, charged him with second-degree sexual assault of a child. The record before us does not reflect why the first-degree sexual assault charge was dropped. It is possible that the State was unable to present the necessary quantum of proof, or was not convinced that it could establish that Shannon's victim had become pregnant by Shannon or that she suffered "great bodily harm" under Wisconsin law,[17] such that the defendant could then be bound over for trial on a charge under § 940.225(1)(a). Alternatively, Count I of the complaint may have been dropped as part of the negotiating process that led to the defendant's plea agreement. We do not know as the record on review does not reflect this information. The important fact, for our purposes, is that *both* Count II in the complaint and the sole count in the information charged Shannon with second-degree sexual assault of a child, so that when Shannon entered into a plea agreement based upon the information, he was pleading guilty to the same specific crime set forth in the criminal complaint in Count II. When Shannon entered this plea agreement, he and his counsel were obviously quite aware of the factual allegations set forth in the complaint. They may have wanted very badly to "bury" those factual allegations by entering a plea agreement that focused on the "bare bones" statutory recitation of the crime as set forth in the information. However, the factual details set forth in the criminal complaint did not magically disappear, nor were they "expunged" from the court record, because Shannon entered a guilty plea on the basis of the information filed in the trial court, which is, *by its*

at the issuance of either an information or a complaint, another five jurisdictions consider a case filed at the issuance of a complaint, and yet another five (including Wisconsin) consider a case filed when the defendant first appears in court (i.e., after the complaint but before the preliminary hearing).

17. As defined in the Wisconsin Criminal Code, " '[g]reat bodily harm' means bodily injury which creates a substantial risk of death, or which

causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily injury." Wis. Stat. Ann. § 939.22; *see also Kirby v. State*, 86 Wis.2d 292, 272 N.W.2d 113 (1978) (assault victim's fractured rib, burns, and scars—resulting from a five-hour period of beatings and torture— qualified as "other serious bodily injury" within the statutory definition of "great bodily harm.").

*nature*, not a factually-rich document. To endorse the majority's interpretation limiting reference to the information only would permit a clever criminal defense attorney to engineer a legal ploy at the plea-bargaining stage so that he might keep the judge from knowing all the facts of the case, thus undermining the sentencing process itself, which as we all know must be based upon a broad range of information concerning the defendant's past conduct.

Having analyzed the respective roles of the criminal complaint and the information in Wisconsin, as well as the specific documents utilized by prosecutors in the 1992 criminal proceedings against Shannon, I feel obligated to discuss some of the cases cited by the majority, including *Lee*, 22 F.3d 736. I note, as an initial matter, that the United States Supreme Court has never had the issue presented whether or not the criminal complaint is a charging document that may be considered by a sentencing court in assessing whether a prior conviction was for a "crime of violence," nor has the High Court adopted the reasoning in *Lee* and similar cases. However, in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Court considered an analogous issue: the extent to which a sentencing court could look to the facts underlying previous "violent felonies" when enhancing a sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1) ("ACCA"). The ACCA authorizes an enhanced prison term for a defendant who is "(1) convicted of being a felon in possession of a firearm, *and* (2) has three previous convictions by any court . . . for a *violent* felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Thus, the ACCA, like the Guidelines, authorizes an enhanced sentence for a defendant who has prior convictions for crimes of violence. The Court in *Taylor* held that "*generally*," the ACCA "requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense" in applying the terms of the statute. *Id.* at 601–03, 110 S.Ct. at 2160. However, in *Taylor*, the Court was not concerned about sentencing judges looking to "indictment[s] *or other charging paper[s]*," such as criminal complaints. *Taylor*, 495 U.S. at 601, 110 S.Ct. at 2159 (emphasis added). Rather, it hoped to avoid "an approach that would require the sentencing court to engage in an *elaborate* factfinding process regarding the defendant's prior offenses." *Id.* By "elaborate," the Court was referring to a factfinding process that would permit a mini-trial, in which the sentencing judge could review and perhaps second-guess the findings of another court. Resorting to a *basic* document of record such as a criminal complaint, which, as noted above, is the basic charging document and serves as the basis for the information, entails no such far-reaching factual inquiry.

This circuit, moreover, has *emphatically cautioned* against reading *Taylor* as a *strict prohibition* against resorting to documents that are part of the court record for sentencing purposes. As noted above, before the ACCA enhancement may apply, a sentencing court must determine that the defendant in fact has three prior convictions for violent felonies, and that these felony offenses were committed on different occasions. In *United States v. Hudspeth*, 42 F.3d 1015 (7th Cir. 1994) (en banc), an en banc opinion that was joined by all three members of this panel, the Seventh Circuit observed that in order to apply the ACCA properly, a sentencing court must by necessity have recourse to the record. We held:

> *Taylor* does not preclude a sentencing court from examining the factual underpinnings of a defendant's prior convictions in order that it might properly apply the ACCA and determine if multiple offenses occurred on one or more "occasions." *As a practical matter, a district court must look beyond the charging papers and judgment of conviction for these documents alone rarely provide the district court with the detailed information necessary* to determine whether multiple offenses occurred on one or more "occasions." *A district court's examination of the factual basis for a defendant's prior convictions does not amount to a retrial of those crimes. . . .* The sentencing court is not being called upon to second-guess valid state court convictions, rather, it is merely determining whether the . . . [prior] convictions resulted from one occasion or more than one occasion.

*Id.* at 1018 n. 3 (citation omitted).

*Taylor* and *Hudspeth* lend strong support to the proposition that a sentencing court *may* consider the charging document known as the criminal complaint for purposes of applying the "crime of violence" sentencing enhancement under § 4B1.2. As we held in *Hudspeth,* a sentencing court may look even "beyond the charging papers and judgment of conviction" to the contents of police reports in order to properly apply the ACCA penalty enhancement. Obviously, then, a sentencing court may look to all the charging papers (including the complaint) in determining whether a prior conviction amounts to a "crime of violence" under § 4B1.2 of the Guidelines. In *Lee,* this circuit mistakenly and without adequate explanation departed from prior precedent,[18] holding that a sentencing court could not look to a criminal complaint as part of its "crime of violence" inquiry under § 4B1.2 and was required to confine its review of the record to "the facts charged in the relevant *indictment or information.*" 22 F.3d at 739. The decision in *Lee* relied upon a 1991 amendment to the commentary accompanying § 4B1.2. The current version of Application Note 2, resulting from the 1991 amendment, states in clear and unambiguous language that in determining whether a prior crime was a "crime of violence," a sentencing court may look to *"the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted."* U.S.S.G. § 4B1.2, Application Note 2. The misguided decision in *Lee* interpreted this new language in the Guidelines commentary to mean that a sentencing court could look only to the language set forth *in an indictment or information* in determining whether a prior conviction was for a "crime of violence." In my view, this interpretation of the revised commentary is mistaken for several reasons: (1) the word "count," as used in Application Note 2, refers to the crime set forth in the complaint as well as to any subsequent charging document derived therefrom (in this case, the information), (2) the language of the commentary explicitly permits an examination of *"conduct"* set forth in the charging instrument, and does not restrict the sentencing court's inquiry to an examination of the statutory elements of the crime only; and (3) Application Note 2 itself does not distinguish among the various types of charging documents used in state and federal criminal actions (i.e., complaint, information, or indictment). *Indeed, because the Application Note does not even mention these documents by name,* it is difficult to understand how the court in *Lee* arrived at the conclusion that only an information or an indictment could be considered by a district court in assessing the nature of a prior conviction for sentencing purposes.

When the language of the Guidelines commentary is applied to Shannon's case (without the misguided interpretation of *Lee*), it is quite evident that the criminal complaint against Shannon could and should have been considered by the sentencing judge in determining the nature of the sexual assault conviction. Application Note 2 states that a court may consider "the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted." Shannon was expressly charged, and either waived the preliminary hearing and/or admitted all the facts in the complaint describing his sexual assault of a child in violation of § 948.02, and is thus the same crime of which he was ultimately convicted. Thus, the offense of conviction was identical to the crime "expressly charged" in the criminal complaint.

The holding in *Lee* is not only unwarranted by the language of the Guidelines, it overlooks the fact that a criminal complaint is *the* fundamental charging document in any felony proceeding in Wisconsin and, as stated earlier, is thus an integral part of the court record. In fact, the criminal complaint is the very lifeblood of the criminal proceeding. In my estimation, *Lee* fails to explain—or provide a legal justification for—its holding that a sentencing court may rely upon an information or indictment only, and *not* upon the basic charging document from which an information springs: the criminal complaint. The majority's argument and its adherence to *Lee* also overlook the way in which sexual assault offenders are typically charged and

---

**18.** Prior to *Lee,* this circuit held that a sentencing court could properly examine the facts underlying a prior conviction to determine whether the prior conviction was for a "crime of violence." *See, e.g., United States v. Terry,* 900 F.2d 1039 (7th Cir.1990).

prosecuted in Wisconsin. Whether or not violence actually attends the sexual assault of a child under the age of 16, the perpetrator will likely be charged under the sexual assault of a child statute, § 948.02, thus avoiding the need for prosecutors to establish that force was used in order to obtain a conviction. Thus, a twenty year-old male who has violent, forcible sex with a fifteen year-old girl might very well be charged under the same statute (sec. 948.02) as a sixteen year-old male who has what the majority refers to as "non-coercive" sexual relations with his fifteen year-old girlfriend. The information might very well be identical in both cases, setting forth only the statutory elements of the crime and statute number (i.e., that the defendant had sexual contact or intercourse with a victim under the age of 16). However, according to the majority, a sentencing court may never go beyond the information for factual detail concerning the crime. Thus, under the majority's reasoning, it is quite conceivable that a defendant who brutally sexually assaults a young girl in Wisconsin and who is charged under § 948.02 could *never* have his sentence enhanced under § 4B1.2 of the Guidelines because there would be no way—based solely upon the bare-bones information—to determine that his prior conviction was for a "crime of violence."

In addition to *Lee,* the majority cites cases from other circuits to support its contention that only the language set forth in an information or indictment may be consulted to determine whether a prior crime was a "crime of violence." *United States v. Palmer,* 68 F.3d 52, 57–58 (2nd Cir.1995); *United States v. Joshua,* 976 F.2d 844, 856 (3d Cir. 1992); *United States v. Neal,* 27 F.3d 90, 93 (4th Cir.1994); *United States v. Fitzhugh,* 954 F.2d 253, 255 (5th Cir.1992); *United States v. Young,* 990 F.2d 469, 472 (9th Cir. 1993). In my opinion, these cases are not as far-reaching as *Lee* because they fail to distinguish among the various types of charging instruments and *not one of them holds,* as does the majority, that the initial and basic

charging instrument, the criminal complaint, is "off bounds." These decisions may aim to limit a court's "crime of violence" inquiry to the basic charging documents of record, *such as* an information or indictment or a complaint.[19] However, I am not persuaded that the references to "informations" and "indictments" in these cases are intended to bar a sentencing court from considering facts set forth in a criminal complaint. In other words, it is improper to give the impression that the Second, Third, Fourth, Fifth, and Ninth Circuits were addressing themselves in these cases specifically to the role of the criminal complaint, *as distinct from an information or indictment.* Rather, it seems that they were using the terms *"information"* and *"indictment"* to designate charging papers, which include the original charging document, the complaint. Therefore, I do not agree that these cases exclude consideration of criminal complaints by sentencing courts, as *Lee* did.

The cases cited by the majority, furthermore, are concerned (as was *Taylor,* discussed above) with avoiding "a wide-ranging inquiry into the specific circumstances surrounding a [prior] conviction." *Young,* 990 F.2d at 472 (quotation omitted); *Fitzhugh,* 954 F.2d at 254 (court may not look at *"all* facts disclosed by the record"). Such a "wide-ranging" inquiry might occur, for example, if a defendant had a prior state conviction for assault and the sentencing court went *beyond* the charging papers in the case, foraging through trial transcripts and the like, to see if (in its opinion) the facts of the case supported a more serious charge, such as *aggravated* assault, that might permit an enhanced sentence under § 4B1.2. However, as noted above, a "wide-ranging inquiry" is not required when a sentencing judge looks merely to the charging paper known as the criminal complaint, which is a basic part of the court record, for factual details surrounding the commission of the crime charged. By referring to such a fundamental document, the court cannot be accused of "nit-picking" or searching through the entire

---

**19.** In *Fitzhugh,* the court held that it was improper to consider "conduct underlying the offense *when the defendant is not charged and convicted of such conduct." Id.* at 254. *Fitzhugh* is not on point, however, because Shannon *was*

charged with and convicted of the second-degree sexual assault of a child, the same charge as set forth in the criminal complaint and later in the information.

record to build a stronger case against the defendant. Moreover, in the case before us, looking to the criminal complaint is the *only* way in which a sentencing court can determine whether violence *actually* attended the commission of the crime, for the mere statutory elements of the crime, as set forth in the information, fail to shed light on this factual question.

In concluding my assessment of the relevant case law, I would like to call attention to two circuit court decisions, not cited by the majority, which articulate a realistic and workable approach to the question of which documents may be examined by a sentencing judge in determining the nature of a prior crime. The cases are *United States v. Spell,* 44 F.3d 936 (11th Cir.1995), and *United States v. Gacnik,* 50 F.3d 848 (10th Cir.1995). These decisions do not engage in meaningless distinctions between a criminal complaint and an information or indictment (as in *Lee*). Rather, they hold that a sentencing judge may "examin[e] *easily produced and evaluated court documents,* including the judgment of conviction, [any] *charging papers* [plural], plea agreement, presentence report adopted by the court, and the findings of a sentencing judge." *Spell,* 44 F.3d at 939 (emphasis added); *see also Gacnik,* 50 F.3d at 856.

The rule set forth in *Lee* (and relied upon and advocated by the majority) is unworkable under the Sentencing Guidelines in a number of ways. By barring a sentencing court's consideration of the criminal complaint, *Lee* prevents the court from including a defendant's prior criminal misdemeanor convictions when calculating his criminal history, for in Wisconsin and elsewhere misdemeanors are more frequently prosecuted, not by information or indictment, but *exclusively by complaint. Lee* is therefore directly at odds with the Guidelines, which direct sentencing courts to include all prior crimes, including prior misdemeanor convictions, when calculating a defendant's criminal history. § 4A1.2(c)(1). Also, it is interesting to note that if we are bound by what the majority considers as magic legal terms *information* and *indictment,* then crimes from those states of Connecticut (2nd Circuit) (Conn. Gen.Stat.Ann. § 54–46); Hawaii (9th Circuit) (Haw. R. Penal Proc. 7); and Kansas (10th Circuit) (Kans.Stat.Ann. § 22–2905) can never be counted as criminal convictions, for those states' criminal proceedings rely on the *complaint* throughout. In other words, the charging paper throughout the criminal proceedings is a *complaint* and a complaint only, not an *information* nor an *indictment.* Possibly, the majority will agree with me and count any criminal convictions based upon a complaint from these states by interpreting the legal document referred to as a complaint synonymously, as I have, with an *indictment* or an *information.*

In addition to posing the difficulties previously discussed, the rule advocated by the majority is out of step with one of the cardinal tenets of federal sentencing law, which is that "[w]hen sentencing a defendant, a judge may appropriately conduct an inquiry *broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.*" *United States v. Taylor,* 72 F.3d 533, 543 (7th Cir. 1995) (quotations omitted, emphasis added). Congress has clearly mandated that "[n]o limitation shall be placed upon the information concerning the background, character, and *conduct* of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661 (emphasis added). In *United States v. Madison,* we explained the crucial need to permit a broad inquiry into a defendant's background:

> The sentencing stage of the trial is one of the most important parts of the criminal process. *In order for a judge to be well advised of the facts surrounding the defendant's background,* and particularly in view of the judge's obligation to the general public, as well as to the defendant, to be fair, reasonable, and just, *it is imperative that he be allowed to draw upon a wealth of information concerning the defendant's background,* from his date of birth up to and including the moment of sentencing.... In order to render justice to all the judge must be able to impress upon a defendant through the *expansive contents of an all encompassing sentencing report* that we are a country of laws and not men.

689 F.2d 1300, 1314 (7th Cir.1982), *cert. denied,* 459 U.S. 1117, 103 S.Ct. 754, 74

L.Ed.2d 971 (1983). More recently, we quoted the language above with approval, noting that "a sentencing judge can and should consider a defendant's *entire* history in order that he might make an informed decision as to the proper punishment." *United States v. Coonce,* 961 F.2d 1268, 1275 (7th Cir.1992) (motion to strike PSR was properly denied).

The factual details set forth in the 1992 criminal complaint against Shannon were made a part of the defendant Shannon's PSR, a document which may include reliable hearsay information, evidence of juvenile crimes committed by the defendant, evidence of past criminal charges that were dismissed, and "*any* information which would be helpful in imposing sentence." *Madison,* 689 F.2d at 1313; *Taylor,* 72 F.3d at 543; *United States v. Nowicki,* 870 F.2d 405, 407 (7th Cir.1989). Shannon's PSR relates:

> sometime in March, 1991, Mr. Shannon *grabbed* [his victim] (dob 4/27/77) *by the wrist* and brought her to a house located ... [in] Racine, Wisconsin. He then *dragged her down the stairs* into the basement. Then he asked her "will you fuck me." [The victim] stated no and ran to the stairs. Mr. Shannon ran up behind her, *grabbed her by the arms* and took her back into the basement. [The victim] stated the defendant then *threw her onto the floor.* She tried to push him off but she was not strong enough. Mr. Shannon then *took her clothes off.* [The victim] was upset and crying and told him she wanted to leave. *The defendant laughed at her and eventually forced her to have intercourse.* [The victim] states when the defendant finally allowed her to get up, she put her clothes back on, went upstairs, and ran out the door. [The victim] denied having consented [to] sex with the defendant.

This court has repeatedly held that a district court, as part of its broad sentencing inquiry, may weigh and consider all reliable information contained in a PSR, unless, upon proper objection, the judge rules that the information set forth therein is inaccurate or unreliable. *Taylor,* 72 F.3d 533; *Coonce,* 961 F.2d 1268. Shannon filed a written objection

to the PSR's inclusion of his prior sexual assault conviction as a "crime of violence," arguing that he pleaded guilty only to the conduct set forth in the information and was therefore never convicted of using violence in connection with the sexual assault offense.[20] It is well established that as part of the "broad [sentencing] inquiry, [a] trial judge is permitted to consider a variety of factors, including ... *reliable evidence of wrongdoing for which the defendant has not been charged or convicted.*" *Nowicki,* 870 F.2d at 407. Furthermore, in order to establish that information contained in a PSR is unreliable or inaccurate, a defendant must do more than merely deny the truthfulness of the information:

> Generally, where a court relies on a PSR in sentencing, it is the defendant's task to show the trial judge that the facts considered in the PSR are inaccurate. A *defendant cannot show that a PSR is inaccurate by simply denying the PSR's truth.* Instead, beyond such a 'bare denial,' he must produce some evidence that calls the reliability or correctness of the alleged facts into question. If a defendant meets this burden of production, the government must then convince the court that the PSR's facts are actually true. *But the defendant gets no free ride; he must produce more than a bare denial, or the judge may rely entirely on the PSR.*

*United States v. Mustread,* 42 F.3d 1097, 1101 (7th Cir.1994) (quotations omitted, emphasis added).

Shannon failed to meet his burden of proving that the information in the PSR was inaccurate. Although, according to the transcript of Shannon's sentencing hearing, Shannon claimed to have a witness who was prepared to testify that the 1992 sexual assault incident did *not* involve violence, the sentencing judge declined to hear this testimony. The reliability of the information in the PSR was never "put to the test" at the sentencing hearing because the district judge assumed (in light of the consensus among the parties concerning *Lee*) that he was barred from inquiring into matters set forth in the criminal complaint. Had the judge not felt

---

**20.** This argument conveniently overlooks the fact that the information contained the very same

statutory allegation set forth in the complaint.

constrained by *Lee,* he might have heard this testimony and concluded that the witness lacked credibility, with the result that the information in the PSR would have been deemed reliable. For reasons discussed above, I do not find fault with the district court for relying upon *Lee.* Obviously, it would have been helpful had the district court required the defendant to meet his burden of proving the information in the PSR unreliable.

ᵛ I am convinced that the facts set forth in a criminal complaint in the record are not "off bounds" for sentencing purposes when those facts have been incorporated into a PSR and when (as is usually the case) the defendant is given an opportunity to prove them unreliable. In my view, the decision whether to inquire into the reliability of factual information set forth in a PSR ought to be left to the sound discretion of the sentencing judge.

## IV. CONCLUSION

In view of the fact that we owe the utmost deference to legislative findings, this court should hold, as a matter of law, that the second-degree sexual assault of a child in Wisconsin is a "crime of violence," as dictated by Wisconsin's explicit determination that the crime is a "sexually violent offense." Wis. Stat. Ann. § 980.01(6)(a). Relevant federal case law interpreting § 4B1.2, expert medical opinion, logic, and common sense all support the conclusion that second-degree sexual assault of a child is a "crime of violence." Furthermore, I am not persuaded that a sentencing court is limited, as the majority holds, to the "bare bones" statutory language set forth in an information or indictment when it makes the determination as to whether a prior conviction is for a "crime of violence." In the words of the Guidelines commentary, the complaint, no less than the information, served to "expressly charge" Shannon with the same crime of second-degree sexual assault of a child. Therefore, the conduct described in the complaint may be considered by a sentencing court in determining whether this crime was a "crime of violence." On the other hand, if we accept *Lee* and restrict the sentencing inquiry unnecessarily, as the majority opinion mandates, we will frustrate the very purpose of sentencing, which is to arrive at a sentence—based upon all reliable information avail-

able—that is proper both from the defendant's point of view and from the vantage point of society and the defendant's victims. *See Madison,* 689 F.2d at 1313. However, I reiterate that even conceding (which I do not) that the court was unable to consult the facts set forth in Shannon's criminal complaint, it was still proper to enhance Shannon's sentence under § 4B1.2 because the second-degree sexual assault of a child in Wisconsin is a "crime of violence" as a matter of law.

I respectfully dissent and would affirm the district court's calculation of Shannon's sentence.

## ORDER

### Oct. 2, 1996

The court, on its own motion, requested a vote for rehearing en banc in the above-entitled cause on September 17, 1996. A majority of the active judges have voted to rehear this case en banc, accordingly

IT IS ORDERED that rehearing en banc be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that the opinion entered in this case on September 3, 1996, be, and is hereby, VACATED. This case will be reheard en banc at the convenience of the Court.